IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
–Northern Division–

MARSHALL TODMAN
2005 Magnolia Woods Ct.
Edgewood, MD 21040

and

TIFFANY GATTIS
2005 Magnolia Woods Ct.
Edgewood, MD 21040,

*Plaintiffs*

–v–

THE MAYOR AND CITY COUNCIL
  OF BALTIMORE
100 North Holliday Street
Baltimore, MD 21202
 SERVICE ON:

 CITY SOLICITOR: The Honorable
   Andre M. Davis
 City Hall- Department of Law
 100 North Holliday Street
 Baltimore, MD 21202

and

BROCK COLLINS
3806 Thoroughbred Lane
Owings Mills MD 21117,

*Defendants.*

Civil Action No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

7056174.1

Plaintiffs Marshall Todman and Tiffany Gattis sue the City of Baltimore and their former landlord, Brock Collins. Plaintiffs state as follows:

## Introduction

1. Plaintiffs challenge as unconstitutional the provisions of the Baltimore City Housing Code that allowed Landlord Brock Collins to deprive Plaintiffs of substantially all of their personal belongings—without prior notice or just compensation. Plaintiffs, former tenants of Defendant Collins, had neatly boxed up their possessions and were ready to move out of Defendant Collins' rental property when Defendant Collins exploited two City laws that allow a landlord to declare a tenant's belongings to be "abandoned" and to do so without notice, despite the fact that no reasonable person ever would view the contents of freshly packed moving boxes to be "abandoned" in any legal or customary sense.

2. In Baltimore City, all residential evictions are performed by the sheriff's office. The relevant provision of the Baltimore City Code does not provide any mechanism for informing a tenant holding over with notice of a scheduled eviction. The City Code also provides that at the time of the eviction, the tenant's belongings are conclusively deemed "abandoned" despite clear evidence that the belongings are not ownerless. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4.

3. The Defendant landlord in this case invoked § 8A-4 to have the Baltimore City Sherriff's office unexpectedly evict Plaintiffs a day before they were scheduled to voluntarily move out of their home. Defendant Collins undertook this action after having been present at a court hearing weeks earlier where Plaintiffs announced their intentions to move out on August 2, 2019.

4. On July 31, 2019, Defendant Collins seized all of Plaintiffs' personal property and demanded exorbitant funds for the property's return. Plaintiffs could not pay. Thus, as a result of the City's unconstitutional ordinances, Plaintiffs lost all of their property; not just expensive electronics and kitchen equipment, but irreplaceable family heirlooms, like the ashes of Plaintiff Gattis' great grandfather, original (and sole copies) of family photos, and the American flag presented to Plaintiff Gattis's family at her grandfather's funeral.

**Parties**

5. Plaintiffs are adult citizens of Maryland.

6. The Mayor and City Council of Baltimore ("Defendant Baltimore City") is a municipal corporation organized and existing under the laws of the State of Maryland.

7. Defendant Brock Collins is a Maryland resident who regularly carries on business in Baltimore City as the owner of residential rental properties in

the City. In Baltimore City alone, Defendant owns at least seven rental properties (none of which are registered with the Baltimore City Commissioner of Housing and Community Development as required under BALTIMORE, MD., CITY CODE ART. 13, § 4-2).

## Jurisdiction and Venue

8. Plaintiffs' claims against Defendant Baltimore City are brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation of Plaintiffs' federal constitutional rights by the City of Baltimore under BALTIMORE, MD., CITY CODE ART. 13, § 8A-4. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1343.

9. This Court has supplemental jurisdiction over Plaintiffs' claims against Defendant Collins under 28 U.S.C. § 1367. Maryland law provides that any claim involving the validity of an ordinance must include the relevant local government as a defendant. MD. CODE, CTS. & JUD. PROC., § 3-405 (b). Accordingly, including Plaintiffs' claims against Defendant Collins in this action is appropriate here because Defendant Baltimore City would have to be named in any other lawsuit against Defendant Collins, creating a potential risk of inconsistent outcomes.

10. Venue is proper in this District under 28 U.S.C. § 1391(b).

**The Rental of the Property**

11. Plaintiffs were tenants of a property belonging to Defendant Collins located at 4214 Ridgewood Ave, 1st Floor, Baltimore, MD 21215 (the "Property").

12. Plaintiffs' rental of the Property was for their own personal use as a home.

13. Plaintiffs and Defendant Collins had an oral lease, in violation of MD. CODE, REAL PROP. § 8-208(a), which requires that landlords such as Defendant Collins who offer five or more dwelling units for rent in Maryland to use a written lease.

14. Soon after they moved into the Property, Defendant Collins urged Plaintiffs to move to one of his less desirable properties. After about nine months of Defendant's urging Plaintiffs to move to another of his rental units, Plaintiffs decided to simply move out of the Property and sever their landlord-tenant relationship with Defendant. Plaintiffs arranged to move into a new rental property by August 2, 2019.

15. In the meantime, Defendant Collins filed a tenant holding over action against Plaintiffs, claiming that the lease was month-to-month and that Defendant Collins had terminated the lease. A hearing occurred on July 2, 2019, in the District Court of Maryland (the "Hearing").

**The Law of Residential Evictions in Baltimore City**

16. Since 2013, Maryland has prohibited non-judicial evictions for residential tenancies. MD. CODE, REAL PROP. § 8–216. Unless the tenant voluntarily vacates the property, an eviction may be conducted only "[i]n accordance with a warrant of restitution issued by a court and executed by a sheriff or constable." § 8–216(b)(2)(i).

17. A landlord who is allegedly entitled to possession of a property, whether through the tenant's non-payment of rent, breach of lease, or refusal to vacate the property at the expiration of the lease, can file an action seeking possession in the District Court for the county where the property is located. If the landlord prevails at trial, the District Court will issue an order granting the landlord possession, which gives the landlord the ability to then file a petition for warrant of restitution.

18. A warrant of restitution directs the sheriff's office to schedule and perform an eviction. In Baltimore City, the landlord has up to 60 days to file a petition for warrant of restitution with the District Court of Maryland after the landlord prevails at trial. BALTIMORE, MD., PUBLIC LOCAL LAWS § 9-6. If the petition is granted, the landlord then brings the warrant of restitution to the Baltimore City Sheriff's Office, which then schedules an eviction date, typically for a few weeks later.

19. In general, once the eviction is scheduled, BALTIMORE, MD., CITY CODE ART. 13, § 8A-2 requires the landlord to give notice to the tenant of the pending eviction date, including by mail at least 14 days prior to the scheduled eviction and by posting on the property at least 7 days prior to the scheduled eviction. Among other things, the required notice must "prominently warn the tenant that any property left in the leased dwelling will be considered abandoned and may be disposed of on execution of the warrant of restitution." § 8A-2 (d)(4).

20. For reasons that are not apparent (or constitutional), Baltimore City has excluded from any notice requirements several kinds of evictions, including tenant holding over actions. § 8A-2 (a)(2)(iii).

21. Nevertheless, even though they are not given the warning that their belongings are in jeopardy or even notice of the eviction date, the Baltimore City Code still provides that the belongings of tenants holding over who are evicted are deemed "abandoned," and that the landlord may dispose of them at will and without liability to the tenant. § 8A-4.

22. Tenants are never given an opportunity, either before or after their property is confiscated, to rebut the City's forced presumption that they have abandoned their property.

7056174.1

### The July 2, 2019 Hearing

23. On July 2, 2019, in the tenant holding over action, both Plaintiffs and Defendant Collins were present and appeared before a Judge in the District Court of Maryland sitting in Baltimore City.

24. The Judge started the Hearing by asking whether the parties had been able to discuss a possible agreement. Plaintiffs informed the Judge that they had secured a new rental home and could move into to their new home on August 2, 2019.

25. The Judge then asked Defendant Collins whether he would agree to a stay of the matter until August 2, 2019, to which Defendant Collins replied that he was concerned that if there was a stay until August 2, 2019, and the Plaintiffs did not leave the Property when they said they would, it would take him several additional weeks to evict them.

26. The Judge then mentioned to Defendant Collins that if Plaintiffs agreed to a stay of two weeks, any eviction would likely be scheduled at least two additional weeks from the date any warrant of restitution would be issued. Defendant Collins expressed skepticism, complaining that "the way the sheriff is running, if you push it out two weeks, it's not going to be August 2."

27. The Judge responded that if she stayed the judgment for two weeks, she was sure that he would file for a warrant of restitution on July 17 after the

stay lifted, and thus would have an eviction scheduled for shortly after August 2.

28. Based on that, the parties seemed to express a willingness to agree to a two-week stay. The Judge summarized: "My understanding is that Mr. Todman and Ms. Gattis are consenting to a judgment and the stay of execution will be until the 16th of July, at which point it would still take at least two weeks to schedule an eviction[,] therefore you would still have your full month before you would be evicted, is that correct?" The parties agreed.

29. Right before the Hearing concluded, Defendant Collins asked the Judge whether he could file for the warrant of restitution on July 16 or had to wait until July 17. The Judge said Defendant Collins would have to talk to the clerks, at which point Defendant Collins stated, "I'll do it the 17th."

30. At no point during the Hearing or otherwise did the Judge or Defendant Collins mention to Plaintiffs that in the event an eviction were to be scheduled for earlier than August 2, 2019, under § 8A-4, Plaintiffs would not be notified of when the eviction would occur and that all of Plaintiffs' personal property at the Property at the time of the eviction would be deemed abandoned.

## The Lead-up to the Eviction

31. Plaintiffs confirmed a move-in date for their new apartment of August 1, 2019 – a day earlier than they stated their moving date could be during the

Hearing. Plaintiffs packed up their belongings and rented a moving truck for their planned move on August 1, 2019.

32. Yet Defendant Collins, in contradiction to his statement during the Hearing that he would wait until July 17, 2019, to schedule an eviction, filed a petition for warrant of restitution on July 15, 2019.

33. Despite the fact that this violated the stay that the Judge ordered until July 16, 2019, the District Court of Maryland accepted the filing and issued a warrant of restitution on July 16, 2019, directing the sheriff to schedule an eviction.

34. Contrary to the expectations of the Judge and the statements of Defendant Collins at the Hearing, the Baltimore City Sheriff's Office moved forward expeditiously, scheduling the eviction for July 31, 2019.

35. Defendant Collins was informed by the Sheriff's Office of the date for the eviction and knew that this was earlier than Plaintiffs expected, but provided Plaintiffs with no notice that the eviction had been scheduled.

36. Plaintiffs were left unaware that the eviction was scheduled two days earlier than they had been discussed at the Hearing and that by virtue of the City Code, all of their worldly belongings would be deemed abandoned.

### The Eviction

37. On the morning of July 31, 2019, one day before their planned move, Plaintiffs went to work as normal. Defendant Collins arrived at the Property

with a Sheriff around 10:00 a.m. The only person home was Plaintiff Gattis' ailing mother, who was told to leave the house and sit on a neighbor's porch.

38. Despite the obvious appearance of tenants planning to move all of their belongings out of the Property, the Baltimore City Sherriff oversaw the eviction and allowed Defendant to exercise dominion over Plaintiffs' property by changing the locks on the Property.

39. Additionally, Defendant Collins grabbed Plaintiff Todman's Yamaha motorcycle that had been parked on the street and dragged it onto the Property, inserted a wheel-locking mechanism, chained it to a tree, and claimed that it too now belonged to him because motorcycle was "in or about" the Property and thus deemed abandoned under § 8A-4.

40. Plaintiffs rushed home from work when they learned of the eviction, but by that time the locks were already changed. Defendant Collins texted Plaintiffs, claiming that he now owned all of their belongings, despite the fact that Plaintiffs' belongings were packed in boxes, clearly ready to be moved, and could not be reasonably believed to have been intentionally abandoned by Plaintiffs.

41. Plaintiffs demanded the return of their belongings on multiple occasions, but were refused by Defendant Collins.

42. Instead, Defendant Collins demanded that Plaintiffs pay him thousands of dollars for their property. When Plaintiffs could not come up with the

amounts demanded, Defendant Collins told them they must not want their belongings back and ceased communication.

43. Accordingly, Plaintiffs have been deprived, presumably permanently, of the vast majority of their personal property, including, among other things, irreplaceable pictures, documents and keepsakes, as well as clothing, electronics, and furniture.

44. Plaintiffs also suffered humiliation, discomfort, and distress as a result of their mistreatment by Defendant Collins and the unconstitutional ordinances that he exploited.

## COUNT ONE
### Damages Under 42 U.S.C. § 1983
### (Defendant Baltimore City)

45. The allegations set forth in all previous paragraphs are incorporated herein by reference.

46. The Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution guarantee that no person shall be deprived of property without due process of law.

47. The Takings Clause of the Fifth Amendment prohibits the taking of personal property without a valid public purpose and without just compensation. The Takings Clause applies to Baltimore City through the Due Process Clause of the Fourteenth Amendment.

48. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, which strips many evicted residential tenants of their property without any prior notice of the consequences of eviction, acts to deprive tenants of their property without due process of law. The ordinance, with regard to the classes of tenants who do not receive any prior notice of the consequences of eviction nor the dates of a scheduled eviction, is facially unconstitutional. Additionally, the ordinance is unconstitutional as applied to Plaintiffs.

49. In addition, application of the City ordinance, which has the effect of conclusively deeming property to be abandoned and up for grabs by landlords, constitutes a taking. No valid public purpose is served by destroying tenants' property interests in their personal belongings, particularly when the tenants' intentions to maintain their ownership interests in that property is undeniable. The fact that the City does not appropriate the property for itself, but rather allows landlords to exercise complete dominion over the property does not remove the ordinance from the reach of the Takings Clause. To the contrary, forcing tenants to give up their property rights so that other private parties may gain those rights exacerbates the constitutional violation.

50. "Abandonment" in property law means the voluntary relinquishment or renunciation of a property right, or an ownership vacuum resulting from the owner's death without heirs or a valid will. The City's distortion of this common law concept effects a taking of personal property subject to the Fifth

Amendment. The City cannot sidestep the Takings Clause by disavowing or redefining traditional property interests.

51. BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is an ordinance that was officially adopted and promulgated by Defendant Baltimore City.

52. Plaintiffs have been deprived of the vast majority of their worldly belongings as a direct result of BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, which operated to deem their belongings "abandoned" and purported to absolve Defendant Collins from any liability to Plaintiffs regarding their belongings.

53. Accordingly, Defendant Baltimore City has deprived, or caused to be deprived, Plaintiffs of their rights secured by the Due Process Clause and Takings Clause under the Fifth and Fourteenth Amendments to the United States Constitution under color of law, and is liable for the damages suffered by Plaintiffs as a result.

### COUNT TWO
### Declaratory Judgment
### (All Defendants)

54. The allegations set forth in all prior paragraphs are incorporated herein by reference.

55. Upon information and belief, Defendant Collins may still retain certain items of personal property belonging to Plaintiffs, purportedly retaining ownership of those items by operation of BALTIMORE, MD., CITY CODE ART. 13, § 8A-4.

56. Accordingly, Plaintiffs seek declaration that BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is invalid as contrary to the Fifth and Fourteenth Amendments to the Constitution of the United States.

## COUNT THREE
### Conversion
### (Defendant Collins)

57. The allegations set forth in all prior paragraphs are incorporated herein by reference.

58. Defendant Collins intended to exercise and did exercise control over Plaintiffs' personal property.

59. Defendant Collins' exercise of control over Plaintiffs' property was unlawful for several reasons: First, BALTIMORE, MD., CITY CODE ART. 13, § 8A-4, facially and as applied in this case, is unconstitutional because it deprives tenants of their property without Due Process and effects a taking without just compensation and without a valid public purpose. Second, Defendant Collins was aware that Plaintiffs believed that any eviction would not occur until after August 2, 2019, and indeed contributed to that belief from his statements during the Hearing, yet proceeded with the eviction without giving Plaintiffs prior notice.

60. By retaining Plaintiffs' belongings without legal justification, Defendant Collins engaged in a conversion of Plaintiffs' belongings.

7056174.1

61. Further, Defendant Collins committed a particularly egregious conversion when he moved Plaintiff Todman's motorcycle and claimed that it was deemed abandoned under the City Code.

62. In converting Plaintiffs' belongings without legal justification, Defendant Collins acted maliciously, willfully and wantonly and with reckless disregard for the rights of Plaintiffs, for his own benefit, intending to punish Plaintiffs for perceived slights against him.

63. As an actual and proximate result of Defendant Collins' conduct, Plaintiffs sustained the losses and damages set forth above.

## COUNT FOUR
### Violation of the Maryland Consumer Protection Act
### (Defendant Collins)

64. The allegations set forth in all previous paragraphs are incorporated herein by reference.

65. The Maryland Consumer Protection Act ("MCPA") prohibits the use of any unfair, abusive, or deceptive trade practices in connection with, among other things, the rental of residential property. The MCPA includes in the definition of unfair, abusive, or deceptive trade practices the "[f]ailure to state a material fact if the failure deceives or tends to deceive." MD. CODE, COMM. L. § 13-301(3).

66. Because Defendant Collins was aware that due to the Hearing, the Plaintiffs believed that no eviction would occur before August 2, 2019, and

16

indeed his own statements during the Hearing contributed to that belief, Defendant Collins' failure to inform Plaintiffs of the material fact that an eviction was scheduled for two days earlier is a violation of the MCPA.

67. As an actual and proximate result of Defendant Collins' conduct in violation of the MCPA, Plaintiffs sustained the losses and damages set forth above.

WHEREFORE, Plaintiffs demand the following relief jointly and severally, against all Defendants:

A. Compensatory damages in an amount to be determined at trial, but no less than $100,000.00;

B. A declaratory judgment that BALTIMORE, MD., CITY CODE ART. 13, § 8A-4 is unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution;

C. Attorneys' fees pursuant to 42 U.S.C. § 1988 with regard to Defendant Baltimore City and pursuant to MD. CODE, COMM. L. § 13-408 (b) with regard to Defendant Collins; and

D. Costs, and such other and further relief as this Court may deed appropriate under the circumstances.

Further, Plaintiffs demand the following relief from Defendant Collins:

E. Punitive damages in an amount to be determined at trial, but no less than $50,000.00.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury as to all issues so triable in this action.

Dated:   November 15, 2019                Respectfully submitted,

/s/ *Joseph S. Mack*
Joseph S. Mack
(D. Md. Bar No. 29021)
THE LAW OFFICES OF JOSEPH S. MACK
PO Box 65066
Baltimore, MD 21209
(443) 423-0464
joseph@macklawonline.com


/s/ *Conor B. O'Croinin*
Conor B. O'Croinin
(D. Md. Bar No. 28099)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com


/s/ *Megan S. McKoy*
Megan S. McKoy
(D. Md. Bar No. 20939)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1848
mmckoy@zuckerman.com
*Attorneys for Plaintiffs Marshall Todman, Jr. and Tiffany Gattis*

7056174.1