**UNITED STATES DISTRICT COUNT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **MARSHALL TODMAN, *et al.*,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No.: 19-cv-3296-GLR** |
| **MAYOR AND CITY COUNCIL** | ) | |
| **OF BALTIMORE, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant, Mayor and City Council of Baltimore (the "City"), by undersigned counsel, submits this memorandum of law in support of its motion to dismiss in this action because the Complaint filed by Plaintiffs Marshall Todman and Tiffany Gattis (individually and collectively, the "Plaintiffs") fails to state a cause of action against the City. Specifically, the Baltimore City law Plaintiffs seek to invalidate does not violate Amendments V and XVI of the United States Constitution and Plaintiffs are not entitled to monetary damages and attorney's fees pursuant to 28 U.S.C. § 1983.

## I. INTRODUCTION

### A. The Baltimore Eviction Chattel Law.

On August 14, 2007, Baltimore City Mayor Sheila Dixon signed into law an ordinance aimed at regulating the disposal of "eviction chattels." BALTIMORE CITY, HOUSING AND URBAN RENEWAL, § 8A-1, *et seq.* (hereinafter, the "Eviction Chattel Law"). "Eviction chattels" are "property removed from a leased dwelling under a

warrant of restitution." § 8A-1(b). A "warrant of restitution" is the eviction order issued by the District Court of Maryland and executed by the sheriff to allow a landlord to take possession of a dwelling from an evicted tenant. *See Hall v. Greystar Management Services, LP*, 28 F.Supp.3d 490, 492 (D. Md. 2014) and MD. CODE ANN., REAL PROP. ART. § 8-216(b)(2) (2019). The ordinance was enacted to, *inter alia*, prevent the property of former tenants from being thrown onto the streets and alleyways of the city after an eviction proceeding and provide landlords, who obtained the legal right to possess their properties, the ability to lease those dwellings in a timely and efficient manner after an eviction. It dictates the rights and responsibilities of both the landlord and tenant *vis-a-vis* property left in a dwelling after the warrant of restitution is executed by the sheriff. § 8A-4. Specifically, it defines when and how a tenant's property is determined to be abandoned and the landlord's duties regarding that property. § 8A-4 - § 8A-6. Importantly it imposes penalties on any person, including landlords, who violates the ordinance's provisions related to the disposal of eviction chattel. § 8A-9.

    **B. Hold Over Tenant Eviction Due Process**.

In Maryland, the eviction of a hold-over tenant is governed by MD. CODE ANN., REAL PROP. ART. § 8-402 (2019). Pursuant to that statute, when a landlord desires to regain possession of her property after the expiration of a tenancy term, she must file an action in the District Court of Maryland where the property is located. § 8-402(b)(1). The court then issues a summons to be served on the hold-over tenant and the tenant is entitled to a hearing in the District Court where they may assert any rights or defenses in the action. § 8-402(b)(2)(i). If the judgment is entered in favor of the

landlord, the District Court grants her a judgment and an immediate warrant for restitution to be executed by the sheriff. § 8-402(b)(2). After the court issues a judgment, the tenant and/or landlord is entitled to file an appeal in the Circuit Court. § 8-402(b)(2)(ii). Therefore, the eviction and eventual ejectment is no surprise to a holdover tenant as they have already been provided with notice of the eviction and an opportunity for a hearing.

Pursuant to the Eviction Chattel Law, all property "in or about" the leased premises at the time the warrant of restitution is executed is abandoned. BALTIMORE CITY, HOUSING AND URBAN RENEWAL, § 8A-4(a). The ordinance places restrictions on what a landlord may do with the abandoned property. The landlord is required to depose of the eviction chattels by: (1) transporting them to a licensed landfill or solid waste facility; (2) donating them to charity; or (3) some other legal means. § 8A-5. Additionally, the landlord is strictly prohibited from placing the eviction chattels, whether they be abandoned or otherwise, in a public right-of-way or on public property. § 8A-6. This provision prevents the landlord from resorting to leaving a former tenant's possessions on public streets and alleyways. If a landlord, or anyone, does not dispose of the Property as dictated by § 8A-5 and § 8A-6, they may be subject to criminal penalties. § 8A-9.

**C. Plaintiffs Consented to the Eviction and Failed to Vacate.**

Plaintiffs are admitted holdover tenants, who attended the District Court hearing and consented to the judgment but failed to vacate their former landlord's dwelling before the sheriff executed the court ordered warrant of restitution. Compl. ¶¶23, 28.

They allege that thereafter, their landlord retained their personal possessions using methods that violated the Eviction Chattel law.[1] Compl. ¶¶41-42. Their solution to this quandary is to demand that this Court declare the very law that the landlord allegedly violated unconstitutional. Compl. ¶¶42-56. Also, although they do not allege wrongdoing by any City official, Plaintiffs seek monetary damages from the City. *Id.* The Court should reject Plaintiffs' invitation. Plaintiffs have not and cannot prove that the Baltimore City ordinance governing the dispossession of eviction chattels is unconstitutional; therefore, their Complaint should be dismissed with prejudice and without leave to amend.

## II. LEGAL STANDARD

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not "state a claim upon which relief can be granted." A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). The legal sufficiency of a complaint is measured by whether it meets the standards for a pleading set forth in Federal Rules of Civil Procedure 8, 9, 10 and 11, as well as Rule 12(b)(6). *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The aggregation of the specific requirements of these rules "reveals the countervailing policy that plaintiffs may proceed into the litigation process only when their Complaints are justified by both law and fact." *Id.* at 193. (emphasis added).

[1] Plaintiff's allegations are accepted as true for the solely for the purpose of this motion.

Although the pleading standard does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, the court is not obligated to accept a plaintiff's conclusory allegations regarding the legal effect of the facts alleged. *See United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994). Rather, a plaintiff has an obligation to provide grounds for his entitlement to relief and that obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008) (*quoting Twombly*, 550 U.S. at 555). "Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted).

Thus, in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*emphasis added*) (*quoting Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, *i.e.*, the "plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (emphasis added). In the instant case, the allegations set forth in the Complaint set

forth no plausible claims on the face of the pleading, and, accordingly, dismissal of all claims against the City is compelled.

## III. STATEMENT OF FACTS

Plaintiffs were tenants of Defendant Brock Collins (the "landlord" or "Collins") at a rental home located at 4214 Ridgewood Avenue, 1st Floor, Baltimore City, Maryland (the "Dwelling"). Compl. ¶23. The Complaint does not state how long Plaintiffs rented the Dwelling from Mr. Collins; however, in the summer of 2019, the landlord filed a holdover tenant action against the Plaintiffs in the District Court of Maryland for Baltimore City. Compl. ¶15. On July 2, 2019, Plaintiffs and Mr. Collins appeared for a hearing in the District Court on the holdover tenant action. Compl. ¶23. Although Plaintiffs wished to stay in the Dwelling for another month—until August 2, 2019, Mr. Collins expressed concern that if they could stay until then that it would take him weeks more to actually have Plaintiffs removed from the Dwelling. Compl. ¶25. Thereafter, Plaintiffs consented to an eviction summarized by the District Court judge as: "[m]y understanding is that **[Plaintiffs] are consenting to a judgment and a stay of execution will be until the 16th day of July**, at which point it would still take at least two weeks to schedule an eviction[,] therefore you would be evicted, is that correct?" Compl. ¶28. Plaintiffs and Mr. Collins agreed. *Id*. Mr. Collins asked the judge when he should file for the warrant of restitution and the judge directed him to the clerk's office. Compl. ¶29. Therefore, **the judge expressly advised the parties that the sheriff could execute the warrant of restitution two weeks after the agreed eviction date**. Compl. ¶26.

Two weeks after the consented stay date, on July 31, 2019, the sheriff executed the warrant of restitution. Compl. ¶37. Although Plaintiffs were not present in the Dwelling, their possessions were still in the home along with Plaintiff Gattis' mother. Compl. ¶37. *Id*. According to the Complaint, Mr. Collins retained the Plaintiffs' possessions and after he refused to sell them back the possessions, ceased communication with Plaintiffs. Compl. ¶42. The Complaint is silent about whether Plaintiff sought redress against Mr. Collins under the Eviction Chattel Law, contacted the police, or swore out a criminal complaint with the District Court commissioner because of Mr. Collins' alleged actions.

## IV. ARGUMENT

The gravamen of Plaintiffs' Complaint is the eviction procedure and the Eviction Chattel Law, specifically, deprived them of their Fourteen Amendment due process rights because it they were not given when the sheriff would execute the warrant of restitution. Plaintiffs further claim that this constitutes a constitutional "taking" pursuant to the Fifth Amendment. Because both of Plaintiffs' claims have no legal merit, the City is entitled to judgment as a matter of law.

### A. The Eviction Chattel Law Did Not Deny Plaintiffs Due Process.

An inquiry into rights secured by the Due Process Clause of the Fourteenth Amendment requires both an analysis of procedural and substantive due process. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975 (1990).

#### 1. Plaintiffs Had Actual Notice of and Actively Participated in the Eviction Proceeding.

Plaintiffs were afforded procedural due process in the eviction proceeding. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950). "Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard. *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008)(internal citations omitted). *See also*, *Nelson v. Diversified Collection Services, Inc.*, 961 F.Supp. 863, 868 (D. Md. 1997). Further, when a judicial proceeding is made available to a plaintiff and she avails herself of that procedure, she cannot later claim to have been denied due process. *See Snider International Corp. v. Town of Forest Heights*, 906 F.Supp.2d 413, 431 (D. Md. 2012).

Plaintiffs admit that non-judicial evictions for residential tenancies are prohibited in Maryland. Compl. ¶16; *see also*, MD. CODE ANN., REAL PROP. ART. § 8-216 (2019). Therefore, it is implicit in the Eviction Chattel Law that before property is subject to the provisions of BALTIMORE CITY, HOUSING AND URBAN RENEWAL § 8A-4 and § 8A-5, that a judicial proceeding has already occurred. The language of the law itself requires that no property is considered abandoned unless and until a warrant of restitution is executed on the property. *See, id*. And, a warrant of restitution is only issued by the District Court of Maryland after the opportunity for a hearing. *See* REAL PROP. ART. § 8-402(b)(2)(i).

A similar issue was examined in *Hall v. Greystar Management Services, LP*, 28 F.Supp.3d 490 (D. Md. 2014). *Hall* interprets the "abandoned property" provision after an eviction proceeding found in the Baltimore County Code, Art. 35, § 35-3-103. The Baltimore County code provides that "[p]roperty removed from the leased premises in accordance with a properly issued warrant of restitution shall be considered abandoned." § 35-3-103(a)(3). Like in this case, the provision expressly abrogates the common law definition of "abandoned" property. 28 F.Supp.3d at 494. In *Hall*, a Plaintiff claimed that her constitutional rights were violated when the sheriff executed a warrant of restitution after she paid an additional month's rent and prepared to move from the leased premises after an eviction hearing. 28 F.Supp.3d at 494. Some of her belongings were deposed of in a landfill and other possessions were never accounted for. *Id*. at 492. Judge Bredar granted the motions to dismiss filed by all defendants. *Id*. at 498. He reasoned:

> it is not this Court's place to second-guess the policy choices of the elected legislators of Baltimore County. Nor is it the Court's place to ignore plain legislative language by blurring bright lines and softening sharp effects out of sympathy for a tenant in difficult circumstances. Rather, the duty of the Court is to uphold the law, as enacted. Except when constitutional mandates otherwise require, it is simply not the province of the courts to rewrite plain and unambiguous statutes even when their application would seem to work unfairness in a particular case. Here, by operation of section 35–3–103, Plaintiff's property became abandoned property once it crossed the threshold of her apartment. From that moment, Plaintiff ceased to have any legal interest in the property.

28 F.Supp.3d at 494.

Here, Plaintiffs were provided with a hearing and consented to the eviction. Compl. ¶28. They actively negotiated the terms of their eviction date and agreed that the stay of eviction would expire on **July 16, 2019**. *Id.* Plaintiffs agreed to this date in anticipation that it would take "at least two weeks" after July 16 for the sheriff to execute the warrant of restitution. Compl. ¶26. They were correct in that instance, 14 days or two weeks later, on July 31, 2019, the sheriff executed the warrant of restitution. Compl. ¶37. By that time, Plaintiffs were not just admitted hold over tenants, but they remained in the Dwelling past the stay of execution. Compl. ¶28, 37.

In their Complaint, Plaintiffs harp endlessly that Mr. Collins stated that he may seek the warrant of restitution on July 16 or 17, but instead filed for the warrant on July 15. Compl. ¶29. According to the very language in their Complaint; there was never an agreement about what date Mr. Collins would seek the warrant of restitution, only that the eviction was stayed until July 16, 2019. Compl. ¶28. Even Plaintiff admits that Mr. Collins sought guidance from the judge who directed him elsewhere. Compl. ¶29. Further, Mr. Collins' decision to seek the warrant on July 15 does not explain the presence of Plaintiffs' possessions in the Dwelling two weeks later—far after the negotiated stay of execution expired.

2. The Substantive Due Process Requirements Were, Likewise Satisfied.

"Substantive due process violations 'run only to state action so arbitrary and irrational, so unjustified by any circumstance of governmental interest, as to be literally incapable of avoidance of any pre-deprivation procedural protections or of adequate

rectification by any post-deprivation remedies. *See*, *Mora*, 519 F.3d at 230 (*quoting Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)). Based on this standard, Plaintiff's substantive due process claims cannot survive. The City has a significant interest in encouraging landlords and property managers to rent residential property to the residents of Baltimore City. Therefore, it had the right to institute a procedure to allow landlords to dispose of possessions left behind by tenants who it has been judicially determined no longer have the right to be in possession of a dwelling. Further, the City has a significant interest in insuring that when tenants are evicted their possessions are not put on the public streets and property of the City. This not only creates potential hazards for other citizens, it displaces the resident's possessions in a way that make it nearly impossible to recover.

3. Plaintiffs' Ignorance About the Provisions of the Eviction Chattel Law Do Not Entitle Them to Invalidate a Constitutional Ordinance.

Plaintiffs' true grievance appears to be that they were allegedly unaware of the Eviction Chattel Law's provisions related to abandoned property. Their Complaint blames both the District Court of Maryland judge and Mr. Collins for not informing them about the law's effects. Compl. ¶30. Maryland law has been consistent for decades: ignorance of the law is not an excuse. *See Svrceck v.* Rosenberg, 203 Md. App. 705, 721, 40 A.3d 494 (Md. App. 2012)(motion to stay foreclosure sale denied when homeowner missed deadline due to ignorance of foreclosure procedures); *HI Caliber Auto and Towing, Inc. v. Rockwood Casualty Insurance Company*, 149 Md. App. 504, 817 A.2d 274 (Md. App. 2003); *Hargrove v. Mayor & City Council of Baltimore,* 146 Md.App.

457, 467, 807 A.2d 149, 154 (2002)(Maryland has rejected ignorance of the law as good cause for late filing under public tort claims acts); *Ohio Casualty Ins. Co. v. Insurance Comm'r*, 39 Md.App. 547, 555, 387 A.2d 622, 626 (1978)("Ignorance of the law cannot serve as an excuse for failure to file a petition of appeal".) It is not the duty of the District Court of Maryland judge, Mr. Collins, or the City to educate Plaintiffs about the ramifications of their decision to consent to an eviction and remain in the Dwelling past the stay of execution.

**B. Plaintiffs' Takings Claims Fail As A Matter of Law**

Plaintiffs' claims under the Fifth Amendment for takings without compensation fail because they cannot establish that the City engaged in a taking. "A necessary component of any takings claim is that the Government actually took property, whether by physical invasion or regulatory action…." *Griffin Broadband Communications, Inc.* v. U.S., 79 Fed.Cl. 320, 324 (Fed.Cl. 2007) (rejecting a takings claim where the property was stolen by Army personnel who were "acting in their private capacity, not as agents of the Government"). *See also Hall v. U.S.*, 84 Fed.Cl. 463, 472 (Fed.Cl. 2008). "There clearly can be no taking when whatever acts complained of are those of private parties, not the government." *Alves v. U.S.*, 133 F.3d 1454, 1458 (Fed. Cir. 1998).

Here, the Complaint makes plain that the "taking" that occurred was perpetrated entirely by a third party—allegedly Mr. Collins. They allege that Mr. Collins engaged in actions that, if true, may have violated the Eviction Chattel law, itself. No takings claim may lie when the alleged action runs contrary to the law. *See Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986)(claims not available to recover for

unauthorized acts). Plaintiffs have made no attempt to attribute any of these actions directly to the City—they do not even allege that the sheriff was at fault. Accordingly, dismissal is appropriate as a matter of law.

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint as to the Mayor and City Council of Baltimore with prejudice and without leave to amend.

Date: December 10, 2019

Respectfully submitted,

ANDRE M. DAVIS
City Solicitor

*/s/ Renita L. Collins*

RENITA L. COLLINS (#28637)
Chief Solicitor
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street
City Hall Baltimore, MD 21202
Phone: 410-396-3930
Fax: 410-547-1025
Renita.Collins@baltimorecity.gov
*Counsel for Defendant Mayor and City Council of Baltimore*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of December 2019, the Memorandum of Law was filed in accordance with the Electronic Filing Requirements and Procedures, as established by the United States District Court for the District of Maryland.

*/s/ Renita L. Collins*
______________________________
RENITA L. COLLINS
Chief Solicitor