IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARSHALL TODMAN, et al., | : |
| Plaintiffs, | : |
| v. | :     Civil Action No. GLR-19-3296 |
| THE MAYOR AND CITY COUNCIL OF BALTIMORE, et al., | : |
| | : |
| Defendants. | : |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Mayor and City Council of Baltimore's (the "City") Motion to Dismiss Amended Complaint (ECF No. 30) and Defendant Brock Collins' Motion to Dismiss Counts II, III, IV, V, and VI of the Amended Complaint (ECF No. 29). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Motions will be granted in part and denied in part.

### I.   BACKGROUND[1]

**A.   Legal Framework**

To understand the facts and issues here, it is helpful to begin with a brief review of the state and local laws governing residential evictions.

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Maryland law prohibits non-judicial evictions for residential tenancies. See Md. Code Ann., Real Prop. ["RP"] § 8-216. As such, "a landlord may take possession of a dwelling unit from a tenant or tenant holding over" only "[i]f the tenant has abandoned or surrendered possession of the dwelling unit" or "[i]n accordance with a warrant of restitution issued by a court and executed by a sheriff or constable." Id. § 8-216(b)(2).

To receive a warrant of restitution, the landlord must "make [a] complaint in writing to the District Court of the county where the property is located." Id. § 8-402(b)(1)(i). Upon receipt of the landlord's written complaint, the district court will direct "any constable or sheriff of the county entitled to serve process . . . to notify the tenant, assignee, or subtenant to appear . . . before the court to show cause why restitution should not be made to the landlord." Id. § 8-402(b)(1)(ii). The sheriff typically must "serve the summons on the tenant, assignee, or subtenant on the property," but if the tenant cannot be located, the sheriff may "affix an attested copy of the summons conspicuously on the property." Id. After a hearing, the district court may enter "judgment for the restitution of the possession of [the] premises" in favor of the landlord and, upon the landlord's request, "issue [a] warrant [of restitution] to the sheriff" of the relevant county. Id. § 8-402(b)(2)(i). In Baltimore City, a landlord must file a petition for warrant of restitution within sixty days after the district court enters judgment in favor of the landlord. Balt. City, Md., Code of Pub. Local Laws art. 4, § 9-6.

Baltimore City Code provides: "Whenever a judgment is entered in favor of the landlord for possession of a leased dwelling, the landlord shall notify the tenant of the date on which the warrant of restitution is first scheduled to be executed by the Sheriff." Balt.

2

City, Md., Hous. and Urban Renewal Code art. 13 ["City Housing Code"], § 8A-2(b). The notice must be mailed by first-class mail at least fourteen days before the scheduled eviction date and posted on the premises at least seven days before the scheduled eviction date. Id. § 8A-2(c). Additionally, the notice must specify the date of the eviction and "prominently warn the tenant that any property left in the leased dwelling will be considered abandoned and may be disposed of on execution of the warrant of restitution." Id. § 8A-2(d)(2), (4). The notice requirement is waived under certain circumstances, including in actions involving tenants holding over. Id. § 8A-2(a)(2)(iii). A tenant holding over is a tenant who "unlawfully hold[s] over beyond the expiration of the lease or termination of the tenancy." See RP § 8-402(a)(1).

As for a tenant's personal property, Baltimore City Code states that "[a]ll property in or about the leased premises at the time that the warrant of restitution is executed is abandoned." City Housing Code § 8A-4(a). Upon execution of the warrant of restitution, the landlord must "dispose of abandoned eviction chattels" by "transporting them to a licensed landfill or solid waste facility," "donating them to charity," or using "some other legal means." Id. § 8A-5(a). The landlord may not dispose of "eviction chattels, abandoned or otherwise, [by placing them] in a public right-of-way or on any public property." Id. § 8A-6. "Neither the landlord nor someone acting on the landlord's behalf is liable for any loss or damage to abandoned property." Id. § 8A-4(b).

**B.    Factual Summary**

Plaintiffs Marshall Todman and Tiffany Gattis rented an apartment on the first floor of 4214 Ridgewood Avenue in Baltimore, Maryland from landlord Brock Collins. (Am.

Compl. ¶ 11, ECF No. 26). Plaintiffs had an oral lease with Collins and lived in the apartment for approximately nine months. (Id. ¶¶ 13–14). During their tenancy, Collins repeatedly urged Plaintiffs to move to another one of his rental units. (Id. ¶ 14). Collins eventually filed a tenant-holding-over action in the District Court of Maryland sitting in Baltimore City claiming that Plaintiffs' lease was month-to-month and that he had terminated the lease. (Id. ¶ 15). Plaintiffs received notice of the tenant-holding-over action through a posting on the door of their apartment. (Id. ¶ 17).

Plaintiffs and Collins attended the hearing before the district court on July 2, 2019. (Id. ¶ 24). At the hearing, Plaintiffs stated they planned to move into a new home on August 2, 2019. (Id. ¶ 25). The judge asked Collins whether he would agree to stay the eviction until then, but Collins replied that he was concerned it would take him "several additional weeks" to evict Plaintiffs in the event they did not move out on the date they said they would. (Id. ¶ 26). The judge informed the parties that an eviction would "likely be scheduled at least two . . . weeks" after the issuance of a warrant of restitution; thus, an eviction would be scheduled for "shortly after August 2" if Collins filed for a warrant of restitution on July 17, 2019 after a two-week stay of the judgment. (Id. ¶¶ 27–28). The judge also confirmed that staying the judgment for two weeks would permit Plaintiffs to remain in the apartment for the "full month" before being evicted. (Id. ¶ 29). As a result, the parties consented to a stay of the judgment until July 16, 2019. (Id.). Before the hearing concluded, Collins told the judge that he planned to file for the warrant of restitution on July 17, 2019. (Id. ¶ 30).

Despite this assurance, Collins filed for a warrant of restitution on July 15, 2019, which the court issued on July 16, 2019. (Id. ¶¶ 33–34). The Baltimore City Sheriff's Office scheduled the eviction for two weeks later, on July 31, 2019. (Id. ¶ 35). Collins did not notify Plaintiffs of the scheduled eviction date. (Id. ¶ 36).

On July 31, 2019, while Plaintiffs were at work, Collins arrived at the apartment with a Baltimore City Sheriff to evict Plaintiffs and change the locks on the Property. (Id. ¶¶ 38–39). At the time, Plaintiffs' belongings were packed into boxes in preparation for their upcoming move. (Id. ¶ 41). Collins then texted Plaintiffs that "he now owned all of their belongings." (Id.). Collins also moved Todman's motorcycle off the street, inserted a wheel-locking mechanism, chained it to a tree, and informed Plaintiffs "that it too now belonged to him." (Id. ¶ 40). Plaintiffs returned home immediately upon learning of the eviction, but Collins had already changed the locks on the apartment. (Id. ¶ 41).

Plaintiffs subsequently demanded that Collins return their belongings, but Collins refused to do so unless Plaintiffs paid him "thousands of dollars." (Id. ¶¶ 42–43). Plaintiffs reported Collins' conduct to the Baltimore City Police Department, but the police informed them that "Collins had the right to take their belongings as a result of the eviction" and he "now owned all of Plaintiffs' belongings." (Id. ¶ 44).

On November 15, 2019, Plaintiffs brought suit against the City and Collins.[2] (ECF No. 1). Plaintiffs filed an Amended Complaint on January 17, 2020. (ECF No. 26). In their

---

[2] After filing this action, counsel for Defendant Collins contacted Plaintiffs to allow them to retrieve their belongings from the Property. (Am. Compl. ¶¶ 46–47). Plaintiffs returned to the Property on January 3, 2020, but found only some of their belongings, many of which were damaged, and discovered that Todman's motorcycle was damaged and missing its license plates. (Id.).

5

six-count Amended Complaint, Plaintiffs allege: damages under 42 U.S.C. § 1983 against the City (Count I); declaratory judgment against the City and Collins (Count II); conversion against Collins (Count III); trespass to chattels against Collins (Count IV); unjust enrichment against Collins (Count V); and violation of the Maryland Consumer Debt Collection Act against Collins (Count VI). (See id. ¶¶ 50–82). Plaintiffs seek damages, declaratory judgment, and attorneys' fees. (Id. at 22).

On January 29, 2020, Collins filed his Motion to Dismiss. (ECF No. 29). The City filed its Motion to Dismiss on January 31, 2020. (ECF No. 30). Plaintiffs filed an Opposition to Collins' Motion on February 12, 2020 and to the City's Motion on February 14, 2020. (ECF Nos. 32 & 33). The City and Collins each filed a Reply on March 6, 2020. (ECF Nos. 42 & 43).

## II.   DISCUSSION

### A.   Standard of Review

The City and Collins move to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Analysis**

    **1.    Damages Under 42 U.S.C. § 1983 (Count I)**

Plaintiffs first allege that the City is liable to them for damages under 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must demonstrate a deprivation of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation

was committed by a "person" acting under color of state law. 42 U.S.C. § 1983; see also West v. Atkins, 487 U.S. 42, 48 (1988) (citation omitted). Importantly, municipalities and local governments are considered "persons" under § 1983 and may be sued directly for monetary relief where the action that is alleged to be unconstitutional implements or executes an ordinance. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978).

Here, Plaintiffs contend that § 8A-4 of the City Housing Code—which provides that "[a]ll property in or about the leased premises at the time that the warrant of restitution is executed is [deemed] abandoned"—improperly strips residential tenants of their property rights in violation of the procedural and substantive due process clauses of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. The Court addresses each claim in turn.

### i.     Procedural Due Process

Plaintiffs first allege that § 8A-4 violates their procedural due process rights guaranteed by the Fourteenth Amendment. "The Fourteenth Amendment provides that no 'State [shall] deprive any person of life, liberty, or property without due process of law.'" Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 252 (4th Cir. 2005) (quoting U.S. Const. amend. XIV). To challenge a statute on procedural due process grounds, a plaintiff must allege that the State action deprived them of a constitutionally protected property interest without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990); see also Rockville Cars, LLC v. City of Rockville, Md., 891 F.3d 141, 146 (4th Cir. 2018). A key concept of procedural due process is "that notice and opportunity to be heard must be given

'before' the deprivation" of the right. Assocs. Com. Corp. v. Wood, 22 F.Supp.2d 502, 506 (D.Md. 1998) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)); see also Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008) ("Procedural due process is simply a guarantee of fair procedures—typically notice and an opportunity to be heard." (citations omitted)). Additionally, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (citations omitted).

Plaintiffs have adequately alleged that they did not have notice and opportunity to be heard before the deprivation of their personal property. As discussed above, landlords are typically required to give tenants advanced notice of a scheduled eviction by mailing a notice and posting on the property before the scheduled eviction date. See City Housing Code § 8A-2(d)(4). The notice must "prominently warn the tenant that any property left in the leased dwelling will be considered abandoned and may be disposed of on execution of the warrant of restitution." Id. However, because Plaintiffs were considered tenants holding over, Collins was not required to notify them of the eviction date. See id. § 8A-2(a)(2)(iii). As such, Plaintiffs were not on notice that the eviction was scheduled to take place on July 31, 2019, were not aware that their personal property would be deemed abandoned pursuant to § 8A-4 on that date, and were not afforded an opportunity to challenge the presumption of abandonment prior to the deprivation of their property. Likewise, Plaintiffs did not receive an opportunity to contest the presumption of abandonment or reclaim their items

9

after the deprivation of their personal property. At this preliminary stage, these allegations are sufficient to state a colorable procedural due process claim.

For its part, the City contends that Plaintiffs had adequate notice and opportunity to be heard because they actively participated in the tenants-holding-over hearing and were on notice that they could be evicted any time after the stay expired on July 16, 2019. However, the hearing was limited to the question of whether Collins was entitled to a warrant of restitution to evict Plaintiffs—the hearing did not address the exact date the eviction would take place or that Plaintiffs' property would be deemed abandoned on that date. (See Am. Compl. ¶¶ 26–31); see also RP § 8-402(b)(1)(ii). Additionally, based on the judge's statement that it would take two weeks for the sheriff to schedule an eviction and Collins' assurance that he would not file for the warrant of restitution until July 17, 2019, Plaintiffs were under the impression that the eviction would take place no earlier than August 2, 2019, the date Plaintiffs intended to vacate the apartment. (See Am. Compl. ¶¶ 26–31). Thus, although the hearing put Plaintiffs on notice that they would be subject to eviction at some point in the future, it did not afford Plaintiffs notice of the precise date they would be deprived of their property interests by operation of § 8A-4. And indeed, because of the representations made during the hearing, this case exemplifies a situation in which an eviction hearing may be insufficient to give tenants holding over notice and opportunity to be heard prior to the deprivation of their personal property.

The City also argues that procedural due process was satisfied because § 8A-4 itself provides sufficient notice that a tenant's property will be deemed abandoned upon eviction. The Court is not persuaded. As Plaintiffs point out, the Supreme Court rejected a similar

argument in Jones v. Flowers, 547 U.S. 220 (2006), when it ruled that "common knowledge that property may become subject to government taking . . . does not excuse the government from complying with its constitutional obligation of notice before taking private property." Id. at 232. Moreover, despite its contention that the City had no duty to notify Plaintiffs of the consequences of an eviction, the City nonetheless requires landlords to provide other types of tenants with written notice of a pending eviction and a warning that any property left in the dwelling will be considered abandoned and be subject to disposal. See City Housing Code § 8A-2(d)(4). Thus, for the purposes of the City's Motion to Dismiss, the Court is not convinced that the existence of § 8A-4 alone provides adequate notice to tenants holding over.

Finally, to the extent the City argues Plaintiffs' procedural due process claim must be dismissed in light of Hall v. Greystar Management Services, L.P., 28 F.Supp.3d 490 (D.Md. 2014), the City's reliance on this case is misplaced. In Hall, the court evaluated whether defendants acted unlawfully when they removed plaintiff's property and transported it to a landfill while executing the warrant of restitution on her apartment. Id. at 493. The Court concluded that, due to the plain language of the county ordinance, plaintiff's "property became abandoned property once it crossed the threshold of her apartment" and she "ceased to have any legal interest in the property" at that time. Id. at 494. Importantly, however, the plaintiff in Hall did not challenge the constitutionality of the county ordinance; rather, plaintiff only raised claims relating to the legality of defendants' conduct in the immediate aftermath of the eviction. Id. at 493. As such, the holding in Hall is not dispositive of Plaintiffs' claims.

In sum, Plaintiffs adequately allege that § 8A-4 violates their procedural due process rights.

### ii. Substantive Due Process

Plaintiffs next contend that § 8A-4 violates their substantive due process rights. To challenge the constitutionality of a statute on substantive due process grounds, plaintiffs must show the state deprived them of their property interest and that the "City's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Wheelabrator Balt., L.P. v. Mayor & City Council of Balt., 449 F.Supp.3d 549, 565 (D.Md. 2020); see also Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995). Specifically, a plaintiff must show that the government action is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford Cty., Md., 946 F.2d 278, 281 (4th Cir. 1991); see also Collins v. City of Harker Heights , 503 U.S. 115, 128 (1992) (requiring a challenge under substantive due process be "arbitrary, or conscience shocking, in a constitutional sense"). Additionally, the plaintiff must establish that the government action has no "substantial relation to the public health, safety, morals, or general welfare." Vill. of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 395 (1926) (citations omitted).

Plaintiffs have adequately pleaded a substantive due process claim. Plaintiffs contend that the City exempted tenants holding over from the notice requirements in § 8A-2 "at the urging of landlords" and that the City adopted § 8A-4 solely to benefit landlords. (Am. Compl. ¶¶ 20, 56). Plaintiffs explain that by deeming tenants' property "abandoned"

12

upon eviction, § 8A-4 effectively "destroy[s] tenants' property interests in their personal belongings," thereby allowing landlords to take possession of it without facing liability. (Id. ¶¶ 54, 57). Indeed, in Plaintiffs' case, "Collins seized all of Plaintiffs' personal property"—including "expensive electronics and kitchen equipment" and "irreplaceable family heirlooms"—and then "demanded exorbitant funds for the property's return." (Id. ¶ 4). Additionally, the effects of the ordinance are particularly harsh where "the tenants' intentions to maintain their ownership interests in [their] property is undeniable," such as where the "belongings were packed in boxes" and "clearly ready to be moved." (Id. ¶¶ 41, 54). In all, Plaintiffs state that "[n]o valid public purpose is served" by § 8A-4. (Id. ¶¶ 54, 56).

In response, the City contends that it has a significant interest in encouraging landlords to rent residential property to Baltimore City residents and therefore is justified in adopting a procedure that allows landlords to dispose of possessions left behind by tenants. While the City may have a legitimate government interest in allowing landlords to efficiently dispose of abandoned property, the Court cannot discern any legitimate justification for an ordinance that, in effect, allows landlords to take possession of tenants' valuable personal property for their own use without any regard to the tenants' actual intent to abandon the property. Moreover, the City does not offer any explanation for the fact that tenants holding over, unlike other types of tenants, are specifically exempted from the eviction notice requirements in § 8A-2. For these reasons, the Court finds that Plaintiffs' substantive due process claim survives the City's Motion to Dismiss.

### iii. Takings Clause

Finally, Plaintiffs allege that § 8A-4 violates the Takings Clause of the Fifth Amendment. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Supreme Court has recognized three categories of takings: (1) cases involving direct, physical appropriations, or "physical takings," in which the government takes title to or "physically takes possession of" real or personal property "for its own use"; (2) cases in which a regulation "denies all economically beneficial or productive use of land"; and (3) cases in which regulations compel a landowner to suffer "a permanent physical occupation of real property." Md. Shall Issue v. Hogan, 353 F.Supp.3d 400, 412–13 (D.Md. 2018) (citations omitted).

Plaintiffs' claim here does not fall into the first category, as the City did not take possession of Plaintiffs' personal property for its own use. Likewise, the second and third categories are not applicable to Plaintiffs' claim because they are limited to interference with real property, not personal property. Thus, Plaintiffs fail to state a claim under any theory recognized in federal Takings Clause jurisprudence.

Plaintiffs nonetheless contend that § 8A-4 amounts to a taking because deeming tenants' belongings "abandoned" upon eviction terminates the tenants' property interests and allows landlords to appropriate tenants' personal property for their own private use. In other words, Plaintiffs argue that § 8A-4 unlawfully disclaims tenants' property interests for the benefit of landlords. To support this argument, Plaintiffs cite to Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982), for the principle that "an owner suffers a special kind of injury when a stranger directly invades and occupies the

14

owner's property." Id. at 436. Importantly, however, the holding in Loretto was limited to permanent physical invasions of real property. Id. at 427. And indeed, this Court has rejected similar attempts to apply the reasoning in Loretto to cases involving personal property. See Md. Shall Issue, 353 F.Supp.3d at 414 (explaining that a regulation depriving an individual of his or her personal property only constitutes a taking where the government itself takes possession of or title to the property). Accordingly, Plaintiffs' Fifth Amendment Takings claim will be dismissed.

### 2. Conversion, Trespass to Chattels, and Unjust Enrichment (Counts III–V)

In addition to their constitutional claims against the City, Plaintiffs also bring claims for conversion, trespass to chattels, and unjust enrichment against Collins. To state a claim for conversion under Maryland law, the plaintiff must allege: "(1) the plaintiff's right to possess the disputed property[;] and (2) an intentional taking of that property by a person without authority or permission." Estate of Jones v. NMS Health Care of Hyattsville, LLC, 903 F.Supp.2d 323, 330 (D.Md. 2012) (quoting Travel Comm., Inc. v. Pan Am. World Airways, Inc., 603 A.2d 1301, 1331 (Md. 1992)). Similarly, to plead trespass to chattels, the plaintiff must allege facts showing the defendant's "intentional use or intermeddling with the chattel in possession of another" resulting in "the chattel [being] impaired as to its condition, quality, or value." Ground Zero Museum Workshop v. Wilson, 813 F.Supp.2d 678, 697 (D.Md. 2011) (quoting United States v. Arora, 860 F.Supp. 1091, 1097 (D.Md. 1994)). Finally, to state a claim for unjust enrichment, the plaintiff must allege that he conferred a benefit upon the defendant, that the defendant knew or appreciated that benefit, and that the defendant's "acceptance or retention of the benefit under the circumstances is

such that it would be inequitable to . . . retain the benefit" without payment. Benson v. State, 887 A.2d 525, 546 (Md. 2005).

Plaintiffs allege that Collins took possession "of substantially all of their personal belongings" in the apartment, including Plaintiffs' "electronics and kitchen equipment" and "family heirlooms" and "clothes, a television, and a piece of furniture" belonging to Gattis' mother. (Am. Compl. ¶¶ 1, 4, 41). Additionally, Plaintiffs state that Collins moved Todman's Yamaha motorcycle from where it had been parked on the street onto the property so that Collins could claim it was "in or about" the leased premises and therefore "abandoned" under 8A-4. (Id. ¶ 40). After taking this property, Collins informed Plaintiffs "that he now owned all of their belongings." (Id. ¶ 41). Although Plaintiffs demanded the return of their property, Collins refused, instead demanding that they "pay him thousands of dollars." (Id. ¶¶ 42–44). Collins later returned "a small fraction of the belongings" to Plaintiffs, but much of it "had been broken." (Id. ¶ 47). Collins also returned the Yamaha motorcycle, but it had "a large scratch" and was "missing the license plates necessary to use it." (Id.). Plaintiffs assert they have been "deprived, presumably permanently, of the vast majority of their personal property" because "Collins has refused . . . to explain the location or disposition of their remaining belongings." (Id. ¶¶ 47–48). In all, these facts are sufficient to state claims for conversion, trespass to chattels, and unjust enrichment.

For his part, Collins contends that Plaintiffs' claims must be dismissed because even if the Court ultimately invalidates § 8A-4 as unconstitutional, he was entitled to rely on the ordinance as it existed at the time. In other words, because Plaintiffs' property was considered abandoned under § 8A-4 at the time Collins took possession of it, he is not

16

liable for "any loss or damage to abandoned property" under § 8A-5. Relatedly, Collins asserts that Plaintiffs no longer had a property interest in the items because they were deemed abandoned under the ordinance; therefore, Collins cannot be liable for conversion, trespass to chattels, or unjust enrichment. In response, Plaintiffs argue that declaring § 8A-4 unconstitutional would make it void ab initio, or as if it never existed. As such, Plaintiffs maintain that Collins cannot insulate himself from liability by claiming that he relied on § 8A-4 when taking possession of Plaintiffs' belongings. At bottom, there is truth to both arguments.

As the Fourth Circuit has noted, "[i]n most jurisdictions it is held that reliance on a statute subsequently declared unconstitutional does not protect one from civil responsibility for an act in reliance thereon which would otherwise subject him to liability." Flemming v. S.C. Elec. & Gas Co., 239 F.2d 277, 279 (4th Cir. 1956). Despite this general rule, exceptions may be made "where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it." 16A Am. Jur. 2d Constitutional Law § 195. Indeed, the Maryland Court of Appeals has recognized the principle that "one should not incur personal liability when relying upon a statute reasonably believed to be valid" even if the statute is later found to be unconstitutional. Perkins v. Eskridge, 366 A.2d 21, 29 (Md. 1976), overruled on other grounds by Parrott v. State, 483 A.2d 68 (Md. 1984). In such cases, courts often look to the "reasonableness and good faith" of a private actor "to determine the consequences flowing from conduct undertaken pursuant to an unconstitutional act." Id. at 29–30. Thus, although reliance on a statute that is later deemed unconstitutional is not an absolute defense, an individual may

be immune to liability if his reliance on the statute was reasonable or in good faith. Conversely, an individual may be liable for acts taken pursuant to a then-valid statute if the acts were done unreasonably or in bad faith.

Here, Plaintiffs have adequately laid out facts suggesting that Collins' reliance on § 8A-4 was not reasonable or in good faith. According to Plaintiffs, Collins filed a petition for warrant of restitution on July 15, 2019, despite agreeing to stay the judgment until July 16, 2019 and informing the district court judge that he would wait until July 17, 2019 to file the petition. (Am. Compl. ¶¶ 29–30, 33). Although Collins knew Plaintiffs were moving out by August 2, 2019, he moved forward with the eviction on July 31, 2019 while Plaintiffs were at work. (Id. ¶¶ 25, 35–36, 38). Collins also moved Todman's motorcycle from the street onto the property so that he could claim the motorcycle was "in or about" the property and thus "abandoned" under the ordinance. (Id. ¶ 40). At this stage, these facts are sufficient to plausibly allege that Collins should be liable for his actions taken pursuant to § 8A-4 even if the Court deems it unconstitutional. Therefore, Plaintiffs' claims for conversion, trespass to chattels, and unjust enrichment survive Collins' Motion to Dismiss.

### 3. Maryland Consumer Debt Collection Act (Count VI)

Plaintiffs also contend that Collins' actions constitute a violation of the Maryland Consumer Debt Collection Act. To state a claim under the MCDCA, plaintiffs must allege that "[i]n collecting or attempting to collect an alleged debt" the collector "claim[ed], attempt[ed], or threaten[ed] to enforce a right with knowledge that the right [did] not exist." Md. Code Ann., Com. Law ["CL"] § 14-202. A "collector" refers to "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Id. § 14-

201(b). A "consumer transaction" is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Id. § 14-201(c).

Plaintiffs assert that Collins "attempt[ed] to collect on an alleged consumer debt" when he "claimed that the thousands of dollars he demanded for the return of the belongings represented debts that he alleged Plaintiffs owed as a result of their refusal to vacate the Property when he demanded they do so." (Am. Compl. ¶ 81). However, Plaintiffs also state that Collins refused to return their property unless they paid him because "he now owned all of their belongings" as a result of the eviction. (Id. ¶¶ 41, 43–44). This suggests that Collins' demand for money was indeed to compensate him for the value of the belongings, which he believed to be his property—not to repay him for damages resulting from Plaintiffs' refusal to vacate the apartment. Moreover, even if the Court accepts Plaintiffs' allegation as true, Plaintiffs fail to provide any details about the debt Collins claimed to be owed, including whether the debt was valid or Collins knew he had no right to collect the debt.[3] As such, Plaintiffs have not adequately pleaded that Collins attempted to collect a debt despite knowing that the right to collect the debt did not exist. See CL § 14-202. Accordingly, Plaintiffs' MCDCA claim will be dismissed.

---

[3] In his Motion to Dismiss, Collins states that Plaintiffs owe him rent for June and July 2019 as well as damages and court costs related to the eviction proceedings. (Def.'s Mem. Law Supp. Mot. Dismiss at 15 n.2, ECF No. 29-1). This assertion could support Plaintiffs' argument that Collins was a collector under the MCDCA. However, this allegation does not appear in Plaintiffs' Amended Complaint. Thus, the Court declines to consider it for the purposes of determining whether Plaintiffs stated a claim under 12(b)(6).

### 4. Declaratory Judgment (Count II)

Finally, Plaintiffs seek a declaratory judgment that the ordinance is unconstitutional and that Collins has no right to possess Plaintiffs' personal property. Individuals asserting that their rights have been affected by a municipal ordinance may seek a declaration of their rights. Md. Code Ann., Cts. & Jud. Proc. § 3-406. Because the Court finds that Plaintiffs have adequately stated a claim under 42 U.S.C. § 1983 on procedural and substantive due process grounds, as well as claims for conversion, trespass to chattels, and unjust enrichment, the Court will permit Plaintiffs' request for declaratory judgment to proceed.

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the City's Motion to Dismiss Amended Complaint (ECF No. 30) and grant in part and deny in part Collins' Motion to Dismiss Counts II, III, IV, V, and VI of the Amended Complaint (ECF No. 29). A separate Order follows.

Entered this 23rd day of September, 2020.

/s/
George L. Russell, III
United States District Judge