IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARSHALL TODMAN, *et al.*,          *

     Plaintiffs,                *

v.                                  *          Civ. No. DLB-19-3296

THE MAYOR AND CITY COUNCIL          *
  OF BALTIMORE,
                                    *
     Defendant.

## MEMORANDUM OPINION

In 2019, Marshall Todman, Jr. and Tiffany Todman ("the plaintiffs") were evicted from their home in Baltimore City.[1] Unbeknownst to them, a city ordinance declared the personal property in their home "abandoned" at the moment of the eviction and allowed the landlord to dispose of their "abandoned" property. The plaintiffs sued the Mayor and City Council of Baltimore ("the City") under 42 U.S.C. § 1983 and their landlord Brock Collins under state law. They alleged, among other things, that the City violated their procedural due process rights. They prevailed on this claim and subsequently recovered damages at a jury trial. The plaintiffs now move for attorneys' fees and costs. Their motion and supplemental motion are granted in large part.

## I.    Relevant Background[2]

On July 31, 2019, the plaintiffs were evicted from their home in Baltimore City. ECF 94-14, ¶¶ 10–11. Under a Baltimore City ordinance, their personal property was deemed

---

[1] Mrs. Todman filed this lawsuit as Tiffany Gattis, before she married Mr. Todman. They married during the pendency of this suit; they now share the same last name. *See* ECF 104-3, ¶ 2.

[2] The Court will dispense with a full discussion of the underlying facts and history of the litigation. The facts and history are included in the Court's September 29, 2022 memorandum opinion

abandoned at the moment of eviction, and their landlord, Collins, could dispose of their property by legal means, such as by keeping the property. *See* Balt. City Code art. 13, § 8A. The plaintiffs sued Collins and the City. ECF 26. They asserted claims against the City under § 1983 and alleged that the City violated their due process rights under the Fourteenth Amendment and took their property without just compensation in violation of the Fifth Amendment. *Id.* ¶¶ 50–58. They also brought state-law claims against Collins. *Id.* ¶¶ 62–82. The plaintiffs retained Zuckerman Spaeder LLP ("Zuckerman Spaeder"), who took on the case pro bono, ECF 194-9, ¶ 21, and the Law Offices of Joseph S. Mack ("Mack"), who worked on a contingent fee basis, ECF 194-10, ¶ 5.

The defendants moved to dismiss the complaint, and the Court granted their motions in part, dismissing one of the state law claims against Collins and the takings claim against the City. ECF 45; *Todman v. Mayor & City Council of Baltimore*, 488 F. Supp. 3d 218 (D. Md. 2020). After extensive discovery, the parties filed summary judgment motions. On September 29, 2022, the Court granted summary judgment in the plaintiffs' favor on their claim that the City deprived them of a cognizable property interest with constitutionally inadequate procedures. *See* ECF 121 & 122. The plaintiffs also sought summary judgment on their claim the City violated their substantive due process rights, ECF 94-1, at 40–42, but the Court declined to reach this question in light of its finding that the City had violated the plaintiffs' procedural due process rights, ECF 121, at 16 n.3. The Court also did not address the claim that the City violated the Fourth Amendment, because the plaintiffs asserted this claim for the first time in their motion for partial summary judgment and had not amended their complaint accordingly. *Id.* Finally, the Court granted summary

---

granting in part the plaintiffs' motion for summary judgment. *See Todman v. Mayor & City Council of Baltimore*, 631 F. Supp. 3d 314 (D. Md. 2022), *aff'd*, 104 F.4th 479 (4th Cir. 2024).

judgment for Collins on most of the remaining state law claims. ECF 121 & 122. The plaintiffs later settled with Collins. ECF 130.

The plaintiffs proceeded to trial to recover damages against the City for the procedural due process violation. A jury awarded the plaintiffs $36,000 for lost or destroyed property and $150,000 for emotional distress. ECF 169. The Court entered a final judgment for these awards on February 21, 2023. ECF 173. The City appealed the Court's summary judgment ruling, and the plaintiffs filed a conditional cross-appeal, requesting that the Fourth Circuit review the dismissal of their takings claim if the appellate court reversed this Court's ruling on the due process claim. *See Todman v. Mayor & City Council of Baltimore*, 104 F.4th 479, 487 (4th Cir. 2024). The Fourth Circuit affirmed the Court's ruling on the due process claim and therefore did not reach the dismissal of the plaintiffs' takings claim. *Id.* at 496.

While the appeal was pending in the Fourth Circuit, the plaintiffs moved for attorneys' fees pursuant to 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54(d)(2)(B). ECF 179. The Court denied the motion without prejudice to renewal after resolution of the appeal. ECF 189. After the Fourth Circuit affirmed the judgment, the plaintiffs filed for attorneys' fees and costs incurred through May 16, 2024 for Zuckerman Spaeder and July 23, 2024 for Mack. ECF 194. The City opposed, ECF 195, and the plaintiffs replied, ECF 196. The plaintiffs filed a supplemental motion for attorneys' fees and costs through August 21, 2024, ECF 197, and the City opposed, ECF 199. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the Court grants in part the plaintiffs' motion and supplemental motion for attorneys' fees and costs. The Court awards $612,450.88 in attorneys' fees ($413,030.25 for Zuckerman Spaeder and $199,420.63 for Mack) and $37,198.48 in costs ($32,324.98 for Zuckerman Spaeder and $4,873.50 for Mack).

## II.    Standard of Review

"In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 28 U.S.C. § 1988(b); *see Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) (noting plaintiffs who prevail under § 1983 "[are] entitled to compensation for reasonable litigation expenses under § 1988"). "[T]he district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The calculation is a three-step process. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court must determine the lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended[.]" *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). In assessing reasonableness, the Court must consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting *Johnson* factors). "Next, the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009)). And "[f]inally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244).

In calculating a fee award, a court may not consider the proportionality between the damages secured for the plaintiff and the fee requested. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

As the Supreme Court has warned, "determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). To that end, district courts "need not, and indeed should not, become green-eyeshade accountants." *Id.* Instead, courts may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorneys' time." *Id.*

## III.  Discussion

### A.  Lodestar Amount

First, the Court must calculate the lodestar amount. To do so, the Court determines the "reasonable hourly rate multiplied by hours reasonably expended[.]" *Grissom*, 549 F.3d at 320. "Under this so-called 'lodestar analysis,' '[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.'" *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 227 (4th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433). Guided by all of the *Johnson* factors, the Court identifies those factors that are most relevant to its analysis.

The City does not contest the reasonableness of counsel's hourly rates. With two exceptions addressed below, the City also does not question the reasonableness of the hours the plaintiffs' counsel spent on this case.

### 1. Rates

An hourly rate is reasonable if it "compensat[es] attorneys at the 'prevailing market rates in the relevant community.'" *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This inquiry is "guided by what attorneys earn from paying clients for similar services in similar circumstances." *Id.* "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). The plaintiffs have established that the rates they seek are reasonable.

The Local Rules of the Court set guidelines for hourly rates. *See* Loc. R. Appendix B.3. The guideline rates are presumptively reasonable. *See Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000); *Green v. Cent. Towing, Inc.*, No. 8:21-CV-00030-PX, 2023 WL 2788623, at *2 (D. Md. Apr. 5, 2023); *Hernandez v. Nelson Precast Prods., LLC*, No. LKG-21-2814, 2023 WL 7089919, at *6 (D. Md. Oct. 26, 2023).

The plaintiffs request hourly rates that fall within the guidelines' presumptively reasonable range. For counsel at Zuckerman Spaeder, they seek an hourly rate of $475 for three attorneys in practice for more than 20 years; $300 for an attorney in practice for 11 years; $225 and $300 per hour, respectively, for two attorneys practicing for five to eight years; and $150 for two paralegals. *See* ECF 194-8, ¶¶ 2, 9 (W. Murphy Decl.); ECF 194-9, ¶¶ 3, 7–10, 13–14, 16 (C. O'Croinin Decl.); *see also* ECF 194-4 & 197-4 (Zuckerman Spaeder fee details listing hourly rates requested for respective attorneys). For Mack, who has been a lawyer in Maryland since 2005, they request an hourly rate of $425. *See* ECF 194-10, ¶ 1 (J. Mack Decl.); *see also* ECF 194-5 & 197-5 (fee details listing hourly rate requested for Mack). These rates are within the ranges presented in the Local Rules. *See* Loc. R. Appendix B.3. They are presumptively reasonable.

Moreover, the plaintiffs have submitted evidence that these rates are at or below the market rate for attorneys in the community with the experience, skill, and expertise to handle comparable cases as well as evidence of the attorneys' qualifications, reputation, and abilities. *See* ECF 194-8, ¶¶ 9–10; ECF 194-9, ¶¶ 3–14; ECF 194-10, ¶¶ 1–4; ECF 194-11, ¶¶ 11–14 (A. Freeman Decl.); ECF 194-12, ¶ 2 (J. Santoni Decl.). This evidence shows that the requested rates are reasonable in light of "the customary fee for like work[,]" "the skill required to properly perform the legal services rendered[,]" and "the experience, reputation and ability of the attorney[.]" *See Barber*, 577 F.2d at 226 n.28.

Based on the evidence submitted by the plaintiffs, the guidelines in our Local Rules, and the relevant *Johnson* factors, the Court finds the requested hourly rates are reasonable.

### 2. Time

To calculate the lodestar, the Court must multiply these reasonable rates by the hours that were "reasonably expended." *Grissom*, 549 F.3d at 320. "The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "In the private sector, 'billing judgment' is an important component in fee setting. . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). Thus, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.*

The plaintiffs provided, in accordance with our Local Rules, detailed records that break down the services performed, hours spent on each task, attorney or paralegal involved, and rate requested. *See* Loc. R. 109.2(b); ECF 194-4 & 197-4 (fee details of Zuckerman Spaeder); ECF 194-5 & 197-5 (fee details of Mack). The Court finds that counsel exercised "billing judgment" by "exclud[ing] . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see, e.g.*, ECF 194-9, ¶ 18 ("[W]e kept time records in the same manner in which we would for any paying client. And we staffed, managed, and litigated this case as we would for any paying client. For instance, the time I spent preparing for argument before the Court of Appeals reflects the same amount of time I have spent in preparing for comparable arguments for paying clients . . . . "); ECF 194-8, ¶ 12 ("[T]he attorneys representing the plaintiffs took steps to ensure that the matter was handled efficiently, without unnecessary duplication of effort by multiple timekeepers, and that the services performed by the various attorneys representing the plaintiffs were commensurate with the appropriate experience levels of the partners, associates and paralegals working on the case."); *id.* ¶ 13 ("I have been informed that Zuckerman Spaeder has written off significant amounts of the time spent in connection with the services provided to plaintiffs in this matter, to avoid seeking compensation for duplication of efforts, and in an exercise of appropriate billing judgment. These write-offs or write-downs have accounted for over 95 hours.").

The hours identified in the fee petition are generally reasonable, with one exception discussed below. In making this determination, the Court finds most relevant the following *Johnson* factors: "the time and labor expended" and "the novelty and difficulty of the questions raised." *See Barber*, 577 F.2d at 226 n.28.

First, the fee details show that the plaintiffs' counsel spent 51.5 hours on case development, including, for example, investigation, communicating with the plaintiffs, researching the ordinance and potential § 1983 claims against the City, and discussing case strategy. *See* ECF 194-4, at 5–7; ECF 194-5, at 3–5. This was a reasonable number of hours to spend on case development based on the labor involved in this process and the "novelty and difficulty" of challenging the constitutionality of the ordinance. *See Barber*, 577 F.2d at 226 n.28.

The plaintiffs' counsel also spent 34.9 hours on the pleadings, including the original and the first amended complaint. *See* ECF 194-4, at 17; ECF 194-5, at 12–13. This required research, calls between counsel, and drafting and revisions. *See, e.g.*, ECF 194-5, at 12. The time and labor required to allege the plaintiffs' claims justifies the time spent on the pleadings.

Next, the plaintiffs' counsel devoted 126.9 hours to written discovery and document production, which included research, drafting interrogatories, communicating with the plaintiffs, responding to document requests from the City and Collins, and seeking third-party discovery from the landlord association involved in the working group that drafted the ordinance. *See* ECF 194-4, at 9–13; ECF 194-5, at 7–8. Plaintiffs' counsel also spent time conducting legal research on the City's legislative privilege. *See* ECF 194-4, at 11. This was a reasonable number of hours to spend on written discovery due to the labor involved and the complexity of issues related to, among other things, the City's legislative privilege.

Preparing for, taking, and defending depositions account for another 110.8 hours of the plaintiffs' requested fees. *See* ECF 194-4, at 7–9; ECF 194-5, at 5–6. This encompasses work on depositions of six individuals, including the redeposition of Collins, as well as disputes that arose concerning the deposition of Collins and the City designee. The labor required to prepare for depositions, as well as the complexities involved in deposing the City designee and addressing

discovery disputes, justify the time spent on depositions. The Court finds that the deposition hours included in the fee petition were reasonably expended.

A significant amount of time was spent on motions practice: 417.3 hours. *See* ECF 194-4, at 5, 13–17; ECF 194-5, at 8–12. This work included responding to the motions to dismiss filed by the City and Collins, preparing and defending the plaintiffs' motion for summary judgment, opposing cross-motions for summary judgment, preparing for the summary judgment hearing, and briefing the plaintiffs' *Daubert* motion and the City's motions in limine. The briefing on the cross-motions for summary judgment alone reached over 140 pages and almost 70 exhibits. Because of the extensive briefing required at the various stages of this multi-year litigation, the complexity of the legal questions involved, and the labor-intensive nature of the services provided, the Court finds the hours billed for motions practice are reasonable.

Travel and attendance at court hearings (other than trial) account for an additional 30.6 hours. *See* ECF 194-4, at 5, 17; ECF 194-5, at 3. These hours were predominantly spent preparing for and attending the summary judgment hearing, pretrial conference, and oral argument on appeal, and travel to and from Richmond for oral argument. This was a reasonable amount of time to expend on travel to and attendance at these hearings.

The plaintiffs' counsel also devoted 9.6 hours to alternative dispute resolution ("ADR") related to their claims against the City. *See* ECF 194-4, at 1; ECF 194-5, at 1. This includes attempts to settle their claims with the City as well as work on the settlement agreement with

Collins to preserve those claims.[3] The Court finds this to be a reasonable amount of time for ADR-related services.[4]

Trial also accounts for a substantial amount of time in the plaintiffs' fee petition. The plaintiffs request fees for over 395 hours that counsel spent preparing for and attending the three-day jury trial. *See* ECF 194-4, at 5, 17–20; ECF 194-5, at 3, 13–15. This includes 302.1 hours for trial preparation. *See* ECF 194-3 (summary of fees listing 302.7 hours for trial preparation and post-trial motions); ECF 194-6, at 38 (combined fee detail showing 0.6 hours for the one post-trial motion). Trials, of course, require extensive preparation. This trial, however, did not require the plaintiffs to prove liability; the trial was only about damages. Only five witnesses testified: the plaintiffs, Collins, Mrs. Todman's mother who was present on the day of the eviction, and Mr. Todman's cousin who testified about Mr. Todman's extensive sneaker collection. It certainly took

---

[3] One of the entries labeled "Case Development, Background Development and Case Administration" describes "further review of settlement agreement with Collins to ensure attorneys' fees claim against City remains intact; review pretrial scheduling order." ECF 194-4, at 7. The plaintiffs' fee details also list revision of the Collins settlement agreement under tasks labeled "ADR." *See, e.g.*, ECF 194-4, at 1. Because this is one element of a multifaceted 1.9-hour task and the dates on the ADR entries and this entry suggest that the time was not double-billed by Zuckerman Spaeder, the label does not change the Court's analysis concerning whether the hours spent on ADR or case development were reasonable.

[4] "[A] district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so.'" *McAfee*, 738 F.3d at 90 (quoting *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001)). The plaintiffs offered to settle their claims against the City for an amount less than what the jury awarded them. *See* ECF 194-10, at 5–6 (settlement offer from March 29, 2021). The City declined the settlement offer and rejected further efforts to settle the case after the Court granted summary judgment in the plaintiffs' favor. *See id.* at 7–8. Although the Court will not alter the lodestar amount or the fee award on this basis, it "simply observe[s] that any prolonged litigation caused by a failure to settle would be 'subsumed' in the time component of the lodestar calculation." *McAfee*, 738 F.3d at 91 (quoting *McAfee v. Bovzar*, 906 F. Supp. 2d 484, 502 n.17 (E.D. Va. 2012), *vacated and remanded in part on other grounds*, 738 F.3d 81); *see also id.* at 90–91 (finding the lower court did not abuse its discretion by referring to a party's unwillingness to settle where "the court did not alter its lodestar calculations to reflect that disapproval").

time to research and calculate the value of the plaintiffs' property, including personal property with only sentimental value, and to prepare witnesses to testify about the lost property and the plaintiffs' emotional distress. But billing for more than 100 hours per trial day is excessive in this case. And there was only one post-trial motion—a consent motion for entry of judgment—that required less than an hour of work. *See* ECF 194-4, at 20; ECF 194-5, at 15. To account for this excessive billing for trial preparation, the Court reduces the fee award for trial preparation by one-quarter. The $103,760 in fees for trial preparation services is reduced to $77,820 ($53,626.87 for Zuckerman Spaeder and $24,193.13 for Mack).[5] Although imprecise, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and the Court "may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. The resulting amount reflects a reasonable amount of time based on the labor required to prepare for a trial of this nature and the difficulty of the legal questions raised.

The plaintiffs request 384.53 hours to defend their win on appeal to the Fourth Circuit.[6] *See* ECF 194-4, at 1–5, 17; ECF 194-5, at 1–3; ECF 197-4, at 1–4. Fees for work performed on an appeal are appropriately awarded by the trial court. *See Overbey v. Mayor & City Council of Baltimore*, No. DKC-17-1793, 2021 WL 3037458, at *6 (D. Md. July 19, 2021) (citing *McManama v. Lukhard*, 616 F.2d 727, 730 (4th Cir. 1980) (per curiam) ("We remand the case, however, for an assessment of additional attorneys' fees against the appealing defendant to

---

[5] The amount requested for trial preparation was calculated by subtracting the amount requested for the post-trial consent motion for entry of judgment—$200—from the total amount requested for trial preparation and post-trial motions—$103,960. *See* ECF 194-3; ECF 194-6, at 38.

[6] Three entries on the fee detail for Mack labeled as motions practice are for tasks related to the appeal. Because the Court finds that these tasks were not double-billed and the amount of time spent on them was reasonable given the complexity of the legal questions and labor involved, the label of "motions practice" does not change the Court's analysis.

compensate the plaintiffs for the expense of their successful defense of his appeal.")). Appeals require a significant amount of preparation. This appeal involved difficult legal issues and oral argument before the Fourth Circuit. The fee details submitted show that counsel spent time on research, strategy, briefing (including an extensive revisions process), and preparing for oral argument, among other tasks. Again, the complexity of the legal questions and the laborious nature of the appeals process justify the reasonableness of these hours. *See Spell v. McDaniel*, 852 F.2d 762, 767 (4th Cir. 1988) (per curiam) (finding 420 hours to be a reasonable amount of time to expend on an appeal in a civil rights case); *see also EEOC v. Freeman*, 126 F. Supp. 3d 560, 581 (D. Md. 2015) ("Given the complexity of the legal issues presented on appeal, several of which were issues of first impression in the Fourth Circuit, 450 hours is reasonable, and the Court will not disallow any of the hours Freeman spent on the appeal.").

Finally, the plaintiffs appropriately request "fees on fees" or "fees incurred in litigating the question of fees." *Mercer v. Duke Univ.*, 401 F.3d 199, 202 n.3 (4th Cir. 2005) (citing *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995)). The plaintiffs seek 185.8 hours for tasks related to the fee petition.[7] *See* ECF 194-4, at 9; ECF 194-5, at 6–7; ECF 197-4, at 1–4; ECF 197-5. The law of our circuit and the Local Rules require the plaintiffs to submit detailed evidence to support the fees they request, including schedules that identify the amount of time spent on a task, the person involved, the litigation phase, and the rate requested. The plaintiffs complied with that requirement. They also submitted declarations from attorneys who worked on the case and

---

[7] One of the entries in the Zuckerman Spaeder fee detail attached to the supplemental motion for attorneys' fees and costs is reviewing the Fourth Circuit's opinion and undertaking related tasks concerning additional appellate review and the plaintiffs' motion for attorneys' fees. ECF 197-4, at 3. This task is labeled as "Fee Petition/Appeal," and it is listed as 1.5 work hours. *Id.* Because the task was not double billed, the label does not change the Court's analysis regarding the reasonableness of expending 1.5 hours on this task. It is included in the Court's calculation for the number of hours spent on the fee petition.

individuals with knowledge of the relevant legal market to support their fee request. The labor involved in preparing the fee petition justifies the number of hours the plaintiffs request for "fees on fees." The Court finds the time spent on the fee petition to be reasonable.

### 3. The City's Challenges

The City raises only two challenges to the reasonableness of the hours counsel worked on this case.

First, the City asserts that the plaintiffs' fees for ADR should be reduced because the City was not interested in a settlement. As the City sees it, "[t]he ADR billed in this matter was between Plaintiffs and Defendant Brock Collins relating to a matter unrelated to the City," which was "separate and apart from any claim against the City." ECF 195, at 3. The City asks the Court to reduce the fee by $1,500. The request is denied.

The City does not identify which ADR entries it disputes. Instead, the City cites to a portion of the plaintiffs' combined fee detail with several entries labeled as "ADR." *See* ECF 195, at 4 (citing ECF 194-6, at 1 (page of combined fee detail included in City's opposition which lists ADR entries adding up to more than $1,500)). Several of the ADR entries concern the plaintiffs' efforts to settle their claims with the City—not their efforts to settle with Collins. Time spent on efforts to settle with the City, even if the City refused to engage in settlement talks, are properly included in an attorneys' fee award. *See Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2014 WL 4407130, at *10 (W.D. Va. Sept. 8, 2014) (awarding attorneys' fees for time spent on settlement efforts that were ultimately unsuccessful); *Martz v. Day Dev. Co., L.C.*, No. JKB-15-3284, 2023 WL 2351825, at *11 (D. Md. Mar. 3, 2023) ("The fact that these efforts did not ultimately result in a settlement of the case is no reason to deny a reasonable request of fees for them."); *Aguilar v. David E. Harvey Builders, Inc.*, No. GLS-18-3953, 2024 WL 4349638, at *6 (D. Md. Sept. 30, 2024) (awarding

14

fees for "a reasonable amount of time spent in drafting an *ex parte* letter and preparing for the [unsuccessful] mediation"). Further, the fees requested for ADR services related to the settlement with Collins are not unrelated to the plaintiffs' claims against the City. These fees are for reasonable and necessary efforts to protect the plaintiffs' § 1983 claims against the City when they settled with Collins. They have excluded time spent exclusively on their efforts to settle with Collins, such as time spent revising terms of the Collins settlement agreement that did not impact the plaintiffs' claims against the City. *See* ECF 197-1, ¶ 4 (C. O'Croinin Supp. Decl.). The ADR fees sought are for time reasonably expended. The City's request to cut the fee petition by $1,500 for ADR-related fees is denied.

Second, the City disputes $475 in fees requested for attorney Conor O'Croinin's travel to Richmond, Virginia to argue before the Fourth Circuit. The City points to a portion of the fee petition that appears to double bill for this travel. *See* ECF 195, at 4 (citing ECF 194-4, at 17). This travel time is not double-billed. Rather, the time entry reflects a division in billing for the first two hours spent traveling to Richmond at O'Croinin's full hourly rate and the second two hours of travel, which he billed at half of his hourly rate. This fee request is in line with the Local Rules of the Court. *See* Loc. R. Appendix B.2(e)(ii)–(iii) ("Up to two (2) hours of travel time (each way and each day) to and from a court appearance, deposition, witness interview, or similar proceeding that cannot be devoted to substantive work may be charged at the lawyer's hourly rate. Time spent in long-distance travel above the two (2) hours limit each way, that cannot be devoted to substantive work, may be charged at one-half of the lawyer's hourly rate."). Accordingly, the City's request to reduce the fee award by $475 is denied.

### 4. Lodestar Result

The plaintiffs' requested rates and hours are generally reasonable for a multi-year, complex civil rights case. The Court therefore multiplies the reasonable hourly rates requested by the hours requested and reduces that amount by $25,940 to account for the excessive time spent on trial preparation. The final lodestar amount of $612,450.88 ($413,030.25 for Zuckerman Spaeder and $199,420.63 for Mack) is substantial. It also is reasonable.

In addition to the *Johnson* factors already identified, the Court finds the factor of "the undesirability of the case within the legal community in which the suit arose" supports the reasonableness of the lodestar amount. *See Barber*, 577 F.2d at 226 n.28. This hard-fought civil rights case required significant time and resources by pro bono counsel and a solo practitioner. The plaintiffs submitted declarations describing the difficulty of finding plaintiffs-side attorneys for a matter of this sort. *See* ECF 194-10, ¶ 9 ("After first speaking with the Todmans, I reached out to several experienced consumer protection attorneys regarding potentially co-counseling this matter. All of them declined, citing the seemingly low chance of success and substantial time commitment."); ECF 194-12, at ¶ 3 ("It is extremely difficult to find consumer-side lawyers in Maryland willing to represent consumers against businesses (or, in this case, a city) engaging in misconduct."). The Court will not enhance the lodestar amount on this basis, but given the undesirability of undertaking this case, the Court is confident that, with the exception noted above, the fees requested—though substantial—are reasonable.[8]

---

[8] One factor the Court must consider is "the attorney[s'] expectations at the outset of the litigation[.]" *See Barber*, 577 F.2d at 226 n.28. When Mack and Zuckerman Spaeder undertook this representation, they expected to recover fees if they were successful. Mack's fee agreement states that his fees will be the greater of either 40 percent of the amount recovered by the plaintiffs or part of the fee petition. *See* ECF 194-10, ¶ 5. Zuckerman Spaeder agreed to represent the plaintiffs on a pro bono basis provided that, if the plaintiffs filed a fee petition, Zuckerman Spaeder would retain an award of fees and costs. *See* ECF 194-9, ¶ 21. In traditional pro bono

## B. Unsuccessful Claims

The next step in the Court's analysis is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 243). The plaintiffs succeeded in their claim that the City violated their procedural due process rights under the Fourteenth Amendment. However, the plaintiffs raised several other claims that were ultimately unsuccessful.

The plaintiffs alleged that the City violated the Takings Clause of the Fifth Amendment, their substantive due process rights under the Fourteenth Amendment, and the Fourth Amendment's prohibition against unreasonable searches and seizures. They also raised state-law claims against Collins. The Court dismissed the plaintiffs' takings claim against the City early in the litigation. When the Court granted summary judgment to the plaintiffs on their procedural due process claim, it declined to reach their substantive due process claim. The plaintiffs also raised a Fourth Amendment claim in their motion for summary judgment, but because they did not include this claim in their complaint, the Court did not reach this claim either. When the City appealed the Court's grant of summary judgment on the procedural due process claim, the plaintiffs filed a conditional cross-appeal of their takings claim in case the Fourth Circuit reversed this Court's ruling on their successful claim. However, because the Fourth Circuit affirmed the Court's summary judgment ruling, it did not rule on the plaintiffs' cross-appeal. Accordingly, the City argues that "for the three alleged constitutional violations, the[y] were only successful on the due

---

representations, when the firm has no expectation of fees at the outset, "courts have consistently held that . . . [they] may receive attorney's fees where appropriate." *See Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001). Because Zuckerman Spaeder and Mack expected compensation if the plaintiffs prevailed and a fee award aligns with their expectations, the attorney expectation factor supports a fee award.

process claim," and asks that the Court reduce the fee award "by a percentage in proportion to their successful claims." ECF 195, at 3.

As the Supreme Court has explained, "[i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. However,

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435 (citation omitted). "Many civil rights cases will present only a single claim," but "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* Because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, . . . it [is] difficult to divide the hours expended on a claim-by-claim basis." *Id.* In that case, "[s]uch a lawsuit cannot be viewed as a series of discrete claims," and "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* As the Fourth Circuit has articulated, "entitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim or . . . a separate proceeding is so unrelated as to justify treating it as a 'separate lawsuit[].'" *Plyler*, 902 F.2d at 280 (quoting *Hensley*, 461 U.S. at 435).

For example, in *Abshire v. Walls*, the Fourth Circuit found that a district court erred by reducing an attorneys' fee award to exclude time spent on unsuccessful claims that were related to a successful claim. 830 F.2d 1277, 1282–83 (4th Cir. 1987), *overruled in part on other grounds*

*by Green v. Bock Laundry Mach. Co.*, 490 U.S. 504 (1989). Abshire filed an action against several police officers after he was arrested, handcuffed to a railing at the police station, and strip searched in front of several officers. *Id.* at 1278–79. Although he alleged false arrest and imprisonment, malicious prosecution, and a § 1983 action for an unconstitutional strip search, among other claims, he obtained a judgment in his favor only on the unconstitutional strip search claim. *Id.* at 1279. The district court awarded him attorneys' fees but reduced his requested award by 75 percent to exclude fees for his unsuccessful claims. *Id.* at 1282. The district court found that these claims were unrelated to the unconstitutional strip search claim. *Id.* The Fourth Circuit vacated the award and remanded for a recalculation. *Id.* at 1283. It rejected the district court's conclusion that the unsuccessful claims were unrelated. *Id.* at 1282–83. Although the claims "were based on different legal theories," the *Abshire* Court determined that "they all arose from a 'common core of facts.'" *Id.* at 1283 (quoting *Hensley*, 461 U.S. at 435). Because "[t]he facts surrounding Abshire's strip search were inextricably intertwined with the facts surrounding his initial confrontation with the police, his arrest and later imprisonment," the court decided "it [wa]s impossible to isolate the inquiry into the constitutionality of the strip search from the other facts." *Id.* And because "Abshire's attorney could not have presented the constitutional aspects of this case without developing and presenting the facts surrounding the entire sequence of events that transpired," the district court erred in finding his unsuccessful claims to be "unrelated" to the successful one. *Id.*

The Fourth Circuit reached a different conclusion in *Goodwin v. Metts*, 973 F.2d 378 (4th Cir. 1992). In that case, plaintiffs prevailed on malicious prosecution claims against a sheriff and the sheriff's supervisor but were unsuccessful on several other causes of action brought against the same defendants, their employer, and other sheriffs. *Id.* at 379–80, 383. The district court reduced their fees by 50 percent to account for their unsuccessful and unrelated claims. *Id.* at 383. The

Fourth Circuit affirmed. *Id.* The court concluded that the successful malicious prosecution claims only involved the concealment of exculpatory evidence, while facts that might have supported unsuccessful claims involved the defendants' conduct from the time of arrest until the plaintiffs' acquittal. *Id.* The *Goodwin* Court distinguished the case from *Abshire* because "the facts supporting Appellants' malicious prosecution claims did not arise from a 'common core of facts' surrounding Appellants' other claims, and [we]re not 'inextricably intertwined' with all the other facts of the case." *Id.* (quoting *Abshire*, 830 F.2d at 1283).

These cases demonstrate that "the court must 'subtract fees for hours spent on unsuccessful claims *unrelated to successful ones*.'" *McAfee*, 738 F.3d at 88 (emphasis added) (quoting *Robinson*, 560 F.3d at 244). The question the Court must answer is: Are the plaintiffs' unsuccessful constitutional claims "related" to their successful procedural due process claim? The Court's inquiry is guided by this instruction:

> The Supreme Court has directed district courts not to draw overly fine distinctions in making this determination. Certainly, where the issues presented in the later proceedings or in separate claims involve the same common core of facts or related legal theories, the case "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Ultimately, determinations of relatedness of claims and the quality of the overall results are not reached through application of any precise rules or formulae, but rather through an equitable judgment of the district court exercising discretion in light of the concerns expressed in *Hensley*.

*Plyler*, 902 F.2d at 280 (citation omitted) (quoting *Hensley*, 461 U.S. at 435).

The plaintiffs did not prevail on all of their constitutional claims against the City. Nevertheless, the takings claim and substantive due process claim are related to their successful procedural due process claim, and the plaintiffs have excised from their fee petition time devoted solely to the unsuccessful Fourth Amendment claim.

Start with the takings claim. The plaintiffs pursued a claim that the City's ordinance constituted a taking of property without just compensation under the Fifth Amendment. Ultimately, this claim was dismissed, and it was not reached by the Fourth Circuit on appeal. Like the unsuccessful claims in *Abshire*, the takings claim and the procedural due process claim "were based on different legal theories" yet they still "arose from a 'common core of facts.'" *Abshire*, 840 F.2d at 1283 (quoting *Hensley*, 461 U.S. at 435). As the *Hensley* Court articulated, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." 461 U.S. at 435. Indeed, in affirming the Court's ruling on the plaintiffs' procedural due process claim, the Fourth Circuit described how takings and due process claims are "intertwined." *See Todman*, 104 F.4th at 494.

To be sure, the fee petition is detailed enough that the Court could, to some extent, "divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Several entries are specifically identified as takings claim-related tasks. *See, e.g.*, ECF 194-4, at 3 (entries listed for, *e.g.*, "takings research" and "[f]urther research on taking claim" at the appeals stage of litigation). However, the Fourth Circuit not only expressed that these claims were intertwined—it actually relied on takings cases in reaching its decision on the due process claim: "*Tyler*, of course, was concerned with takings and here we are considering a due process challenge, but the two concepts are intertwined, and we see no reason that the property protections afforded under the Due Process Clause ought not to track the rule laid out in *Tyler*." *Todman*, 104 F.4th at 495 (citing *Tyler v. Hennepin County*, 598 U.S. 631 (2023)). The Fourth Circuit cited several other takings decisions. *See id.* at 494 (citing *Cerajeski v. Zoeller*, 735 F.3d 577, 579 (7th Cir. 2013) and *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998); *Hall v. Meisner*, 51 F.4th 185, 190 (6th Cir. 2022)). Time

spent on the takings claim, then, was time well spent. *See, e.g.*, ECF 194-4, at 2 (time entry for "[i]nitial review of Hennepin County takings decision"). Under these particular circumstances, the Court cannot find that the takings claim was "so unrelated as to justify treating it as a 'separate lawsuit[].'" *See Plyler*, 902 F.2d at 280 (quoting *Hensley*, 461 U.S. at 435).

The plaintiffs' substantive due process claim also is related to their procedural due process claim. The Court declined to reach the substantive due process claim because it found a procedural due process violation. However, both due process claims "involve the same common core of facts [and] related legal theories." *See id.*

As for the Fourth Amendment claim, the plaintiffs have excluded time exclusively devoted to their Fourth Amendment argument. *See* ECF 197-1, ¶ 3 (stating that plaintiffs removed $723 in time entries that solely related to the argument that the ordinance violated the Fourth Amendment). Of the time entries that remain, it is not possible to "divide the hours expended on a claim-by-claim basis." *See Hensley*, 416 U.S. at 435. Fees for developing related legal theories and the "common core" of facts from which these claims arise should not be excised from the lodestar amount. They are "inextricably intertwined" with the successful procedural due process claim. *See Abshire*, 830 F.2d at 1283. Thus, the Court declines the City's request to reduce the fee award based on the unsuccessful Fourth Amendment claim.

The plaintiffs prevailed only on their procedural due process claim. But under *Hensley*, the Court will not reduce the lodestar amount based on their unsuccessful yet related constitutional claims.[9]

---

[9] The plaintiffs did not succeed on their claims against Collins. One state-law claim against Collins was dismissed, the Court granted summary judgment on many of the other claims against him, and the plaintiffs eventually settled with Collins. However, discovery and motions practice related to Collins were necessary to advance the plaintiffs' claims against the City. Collins was the City's only witness at trial, and the documents he produced were on the City's exhibit list. The City urged

### C.  Degree of Success

The final step is to "award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). This is "the most critical factor" in the Court's analysis. *Id.* at 92 (quoting *Hensley*, 461 U.S. at 436). To identify "the extent of the relief obtained," a court "must compare the amount of the damages sought to the amount awarded." *Mercer*, 401 F.3d at 204. Nevertheless, "[t]he difference between the amount recovered *and the damages sought* is not the only consideration." *Id.* at 205–06 (quotation omitted). In addition, "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Rivera*, 477 U.S. at 574; *cf. Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006) ("Awards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation.").

Here, the plaintiffs succeeded in their litigation goals. They defeated the City's motion to dismiss and motion for summary judgment. They secured summary judgment in their favor that the City violated their procedural due process rights—a ruling affirmed by the Fourth Circuit. Success in this civil rights suit conferred "important social benefits." *See Rivera*, 477 U.S. at 574; *see, e.g.*, *Scearce v. Ingram*, No. 4:23-CV-00012, 2024 WL 4615748, at *5 (W.D. Va. Oct. 30, 2024) (awarding the full amount determined by the first two steps of the fee analysis "primarily for the importance of the vindication of the right at issue"); *cf. Butler v. Directsat USA, LLC*, No.

---

the plaintiffs to only pursue their state-law claims against Collins, and as the Court recognized in its ruling on the cross-motions for summary judgment, Collins acted pursuant to the ordinance, demonstrating the connection between the plaintiffs' claims against him and their claims against the City. The plaintiffs also voluntarily reduced the time they billed for briefing on their claims against Collins. *See* ECF 194-1, at 20 n.7. Accordingly, the Court will not reduce the fee based on the plaintiffs' unsuccessful claims against Collins.

DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016) ("[N]onmonetary goals, such as vindicating rights and deterring future violations, can be served by FLSA litigation and can be a measure of a plaintiff's success.").

Based on the plaintiffs' high degree of success, the Court awards the full amount determined by steps one and two of its fee analysis: $612,450.88 ($413,030.25 to Zuckerman Spaeder and $199,420.63 to Mack).

### D. Costs

"[A] prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." *Daly*, 790 F.2d at 1084. The plaintiffs seek reimbursement for nontaxable expenses related to the provision of legal fees. "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 773 (D. Md. 2022) (quoting *Spell*, 852 F.2d at 771).

The plaintiffs have requested costs that are normally charged to a client. These include line-items such as printing, parking for the jury trial in Baltimore, legal research software, PACER fees, and courier services. *See* ECF 194-7 (cost summary); ECF 197-6 (supplemental cost summary); ECF 194-8, ¶ 15 (declaration describing costs requested in this case as "the types of costs that would typically be passed on to a client in a matter subject to a law firm's standard hourly rate fee engagement"). These costs are reasonable. The City has not objected to them.

The Court grants the plaintiffs' request for $37,198.48 in costs ($32,324.98 for Zuckerman Spaeder and $4,873.50 for Mack).

## IV.    Conclusion

Section 1988(b) allows courts to award attorneys' fees and costs to plaintiffs who prevail on claims under § 1983. The plaintiffs prevailed on their § 1983 claim at trial and on appeal. For the foregoing reasons, the Court grants the plaintiffs' motions in part and awards the plaintiffs $612,450.88 in attorneys' fees ($413,030.25 for Zuckerman Spaeder and $199,420.63 for Mack) and $37,198.48 in costs ($32,324.98 for Zuckerman Spaeder and $4,873.50 for Mack). A separate order follows.

Date: March 31, 2025

                                                 Deborah L. Boardman
                                                 United States District Judge